## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

YARAH CHEHAB,
As next of friend of RASHA ALAWIEH,

               Petitioner,

v.

KRISTI NOEM, Secretary of U.S.
DEPARTMENT OF HOMELAND SECURITY;
ET AL.,

               Respondents.

Civil Action No. 1:25-cv-10614-LTS

## RESPONDENTS' RESPONSE TO HABEAS PETITION AND COURT ORDER

Respondents, by their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, submit this Response to Petitioner, Yarah Chehab's ("Petitioner") Petition for Habeas Relief ("Petition") and the Court's orders entered on March 14, 2025 and March 16, 2025.[1] Dkt. Nos. 6 and 12.

By statute, an alien "who has not been admitted … shall be deemed … an applicant for admission."  8 U.SC. § 1225(a)(1).  Per statute, "[a]ll aliens who are applicants for admission … shall be inspected by immigration officers."  *Id.*, § 1225(a)(3).  An applicant for admission "may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States, including … whether the applicant is inadmissible."  *Id.* § 1225(a)(5).

---

[1] While the Court has not yet ordered Respondents to provide a response to the merits of the Petition, Respondents nonetheless set forth argument in this Response as to the Court's lack of jurisdiction to review the Expedited Removal Order issued by U.S. Customs and Border Protection ("CBP") and additional deficiencies with the Petition that render it subject to denial.

U.S. Customs and Border Protection ("CBP") deemed Dr. Rasha Alawieh ("Dr. Alawieh") inadmissible to the United States after conducting a review of the contents of her cellular phone and based on her statements provided to CBP when she presented herself for inspection for purposes of admission to the United States. As explained in greater detail below, CBP's inspection of Dr. Alawieh's phone discovered multiple Hezbollah martyr photos, sympathetic photos and videos of former third secretary general of Hezbollah, Hassan Nasrallah, Iranian Supreme Leader Ayatollah Ali Khamenei, former Quds Force Commander Qasem Soleimani, former Iranian Supreme Leader Ayatollah Ruhollah Khomeini, Sayyid Muhammad Fadlallah (spiritual leader of Hezbollah), and various other Hezbollah militants were found in the deleted photos folder. With the discovery of these photographs and videos, CBP questioned Dr. Alawieh and determined that her true intentions in the United States could not be determined. As such, CBP canceled her visa and deemed Dr. Alawieh inadmissible to the United States as an individual who was not in possession of a valid immigrant visa per 8 U.S.C. § 1182(a)(7)(A)(i).

If a CBP officer determines that an alien who is arriving in the United States is inadmissible under 8 U.S.C. § 1182(a)(7), "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum … or a fear of persecution." 8 § 1225(b)(1)(A)(i). "Any alien subject to the procedures under [8 U.S.C. § 1225(b)] *shall be detained* … until removed." *Id.* § 1225(b)(1)(B)(iii)(IV).

Pursuant to these statutory provisions, CBP conducted an inspection of Dr. Alawieh upon her arrival at Boston Logan International Airport. Based upon the results of this inspection, CBP determined Dr. Alawieh was inadmissible to the United States under 8 U.S.C. § 1182(a)(7) as an immigrant who was not in possession of a valid nonimmigrant visa at the time of application for

admission.  As such, CBP per statute, detained Dr. Alawieh and issued her an Expedited Removal

Order.  *See Exhibit A* attached hereto.

## PETITION

On March 14, 2025, the verified Petition was filed with this Court.  *See* Dkt. No. 1.  In the

Petition, it is alleged that on March 11, 2025, Dr. Alawieh, a Lebanese national, was issued an

H1B visa for the purpose of pursuing employment as an Associate Professor of Medicine at Brown

University in Providence, Rhode Island.  *Id.,* ¶¶ 2, 6. On March 13, 2025, Dr. Alawieh arrived at

Boston Logan Airport and was detained by CBP after inspection.  *Id.,* ¶ 15.  Dr. Alawieh claims

that her detention violates the Fifth Amendment, the APA, and the Immigration and Nationality

Act.  As relief, Dr. Alawieh asked this Court to enter a stay of removal, for the Court to order her

release with an issuance of a writ of habeas corpus, and to permit Dr. Alawieh access to counsel.

## CBP's INSPECTION AND INTERVIEW of DR. ALAWIEH

On March 13, 2025, CBP interviewed Dr. Alawieh as part of its inspection of her after

she presented herself as an applicant for admission to the United States.  *See Exhibit B* attached

hereto.  During the interview, Dr. Alawieh was questioned about multiple photos she had on her

phone of Hassam Nasrallah, a leader of the terrorist organization in Lebanon, Hezbollah, as well

as of Hezbollah fighters and martyrs.  *Id.,* pp. 3-5.  In explaining her possession of the photos,

Dr. Alawieh stated that Nasrallah is the leader of Hezbollah, and as a Shia Muslim, Nasrallah is

highly regarded in the Shia community as a religious figure.  *Id.* p. 3.  Accordingly, she follows

his religious and spiritual teachings but not his politics, despite Hezbollah's status as a political

party in Lebanon. *Id.*  Similarly, multiple photos were found of Ayatollah Khameni, the Supreme

leader of Iran. *Id.* p. 4.  In explaining their existence on her phone, Dr. Alawieh stated that the

Ayatollah is also a Shia religious leader, and she follows his religious teaching, but not his

politics.  *Id.*  In explaining why these multiple photos were deleted by her 1-2 days before she arrived at Logan Airport, Dr. Alawieh stated that she did not want to give authorities the perception that she supports Hezbollah and the Ayatollah politically or militarily.  *Id.*  Dr. Alawieh acknowledged that she supported and admired Nasrallah for his religious teachings, not his politics.  *Id.* p. 5.  Dr. Alawieh also had photos on her phone of Hezbollah martyrs.  She shared the photos of Nasrallah and Hezbollah martyrs with others, despite her knowledge that Hezbollah has been designated by the United States as a terrorist organization.  *Id.*  Dr. Alawieh informed CBP that she was saddened by the death of Nasrallah and that, while in Lebanon waiting for her visa, she attended a commemoration of his death.  *Id.* p. 6.  Dr. Alawieh also told CBP that her family are supporters of Hezbollah.  *Id.* p. 5.  Upon completion of the interview, CBP found Dr. Alaweih inadmissible under INA Section 212(a) (7) (A) (i) (I) and issued the Expedited Removal Order pursuant to INA Section 235 (b)(1).  *Id.* p. 6.

## BACKGROUND

### A.  Legal Background for Aliens Seeking Admission to the United States

The Supreme Court has long recognized that Congress exercises "plenary power to make rules for the admission of foreign nationals and to exclude those who possess those characteristics which Congress has forbidden."  *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972).  Pursuant to that longstanding doctrine, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."  *Landon v. Plasencia*, 459 U.S. 21, 32 (1982).

Arriving aliens applying for admission at the border, thus, lack any constitutional due process rights with respect to admission: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned,"  *Shaughnessy v. United States ex rel.*

*Mezei*, 345 U.S. 206, 212 (1953), and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination". *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Dep't of Homeland Sec. v. Thuraissigiam*, explaining that an individual who was an applicant for admission—like Dr. Alawieh— "has only those rights regarding admission that Congress has provided by statute." 591 U.S. 103, 139-40 (2020).

Because applicants for admission have not been admitted to the United States, their constitutional rights are truncated: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Mezei*, 345 U.S. at 212. As such, Petitioner's detention without access to release prior to removal did not violate the Fifth Amendment's Due Process Clause because the statute governing her inspection and detention does not allow for release aside from parole at DHS's discretion. *See Jennings*, 538 U.S. at 300 ("That express exception to detention implies that there are *no other* circumstances under which aliens detained under § 1225(b) may be released." (emphasis in original)).

The broad scope of the political branches' authority over immigration is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004). Accordingly, "certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographical borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). As explained by the Supreme Court, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country …". *Thuraissigiam*, 591 U.S. at 139. Stated further, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are

'treated' for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Mezei*, 345 U.S. at 215). Applying the "century-old rule regarding the due process rights of an alien seeking initial entry[,]" the Court explained that such aliens have "only those rights regarding admission that Congress has provided by statute." *Id.* at 139-40.

In exercising its plenary power over immigration, Congress has delegated to the Secretary of Homeland Security the responsibility for "[s]ecuring the borders," enforcing the immigration laws, and "control[ling] and guard[ing] the boundaries and borders of the United States against the illegal entry of aliens." 6 U.S.C. §§ 202(2) & (3); 8 U.S.C. § 1103(a)(5). Relevant here, aliens seeking admission to the United States at ports of entry are subject to inspection by a CBP officer and carry the burden of demonstrating their admissibility into the United States. *See* 8 U.S.C. § 1225(a)(3); 8 C.F.R. § 235.1(f). After arriving at a port of entry, CBP officers inspect each alien requesting admission under 8 U.S.C. § 1225. The officer will determine if an inadmissibility ground under 8 U.S.C. § 1182 is applicable. The term "admission" is defined by the INA to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A); *see also* 8 C.F.R. § 1235.1 (setting forth inspection procedures). An alien who is seeking admission is known as "an applicant for admission." 8 U.S.C. § 1225(a)(1).[2]

---

[2] A visa does not guarantee entry into the United States. The Department of Homeland Security (DHS), U.S. Customs and Border Protection (CBP) officials at the port-of-entry have authority to permit or deny admission to the United States." https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html/visa#:~:text=A%20visa%20does%20not%20guarantee,admission%20to%20the%20United%20States. Similarly, the CBP public website provides: Issuance of a visa does not guarantee entry to the United States. A visa simply indicates that a U.S. consular officer at an American embassy or consulate has reviewed the application and that an officer has determined that the individual is eligible to enter the country for a specific purpose. The CBP Officer at the port-of-entry will conduct an inspection to determine if the individual is eligible for admission

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104208, Tit. III, § 302(a), 110 Stat. 3009-579, Congress amended Section 1225(b) to add "expedited removal" procedures to "streamline rules and procedures . . . to make it easier to deny admission to inadmissible aliens," while ensuring that there is "no danger that an alien with a genuine asylum claim will be returned to persecution." H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1, at 157–58 (1996) (House Report). After IIRIRA, Section 1225(b) provides that, if an immigration officer determines that an alien "who is arriving in the United States" lacks valid documents or is inadmissible due to fraud, the officer "shall order the alien removed from the United States without further hearing." 8 U.S.C. 1225(b)(1)(A)(i); *see* 8 U.S.C. §§ 1182(a)(6)(C) & (7).

If the alien indicates an intention to apply for asylum or expresses a fear of persecution or torture, an asylum officer determines whether the potential applicant has a credible fear. *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii) & (B); 8 C.F.R. §§ 208.30, 235.3(b)(4). The alien "shall be detained pending a final determination of credible fear of persecution." 8 U.S.C. 1225(b)(1)(B)(iii)(IV). Here, Dr. Alawieh denied experiencing persecution while in Lebanon, nor a well-founded fear of future persecution upon return to Lebanon; thus, she informed CBP that she was not seeking asylum. *See Exhibit B,* p. 6.

The INA precludes all further review except where the INA expressly restores jurisdiction over particular types of claims. 8 U.S.C. §§ 1225(b)(1)(C), 1252(a)(2)(A)(iii), 1252(e)(2); 8 C.F.R. § 1003.42(f). Section 1252(a)(2)(A), titled "Matters not subject to judicial review," provides that, for "[r]eview relating to section 1225(b)(1)"—including any order of expedited

---

under U.S. immigration law. https://www.cbp.gov/travel/international-visitors/visa-waiver-program/requirements-immigrant-and-nonimmigrant-visas

removal issued under section 1225(b)(1)—"*[n]otwithstanding any other provision of law* ... no court shall have jurisdiction to review ... *except as provided in subsection (e)* [*i.e.*, Section 1252(e)]," "any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," or any "decision ... to invoke the provisions of such section," or any "procedures and policies adopted ... to implement the provisions of section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(i), (ii), (iv) (emphasis added).

Section 1252(a)(2)(A) thus removes from federal courts *any* jurisdiction to review issues "relating to section 1225(b)(1)," other than as explicitly permitted by section 1252(e). Section 1252(e)(2), titled "Habeas Corpus Proceedings," restores jurisdiction over three specific types of habeas claims: challenges to the determinations made in expedited removal proceedings that "the petitioner is an alien," and that he has not "been admitted" as a lawful permanent resident, refugee, or granted asylum, *see* 8 U.S.C. § 1252(e)(2)(A), (C), and habeas challenges to "whether the petition was ordered removed under" section 1225(b)(1). *Id.* § 1252(e)(2)(B). "In determining whether an alien has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner." *Id.*

## ARGUMENT

### A.  This Court Lacks Jurisdiction to Review an Expedited Removal Order

Dr. Alawieh asks this Court to declare that her detention is unauthorized by statute and contrary to law and therefore seeks review of her Expedited Removal Order.  This Court, however, lacks jurisdiction to review Expedited Removal orders aside from narrow areas that are subject to review, but that are not at issue in this proceeding.

8

Title 8, section 1252(a)(2)(A), titled "Matters not subject to judicial review," provides that, for "[r]eview relating to section 1225(b)(1)"—including any order of expedited removal or credible fear determination issued under section 1225(b)(1)—"[n]otwithstanding any other provision of law ... no court shall have jurisdiction to review ... except as provided in subsection (e) [i.e., section 1252(e)]," "any ... cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," "a decision ... to invoke the provisions of such section," or "procedures and policies adopted ... to implement the provisions of section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(i), (ii), (iv) (emphasis added).

Section 1252(a)(2)(A)(iii) further eliminates jurisdiction—without any exception under subsection (e)—to review "the application of [section 1225(b)(1)] to individual aliens, including the determination made under section 1225(b)(1)(B)." Section 1252(a)(2)(A) thus squarely removes from federal courts any jurisdiction to review issues "relating to section 1225(b)(1)," except as "provided in subsection (e)." *Make the Road New York v. Wolf*, 962 F.3d 612, 626 (D.C. Cir. 2020); see *Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818 (9th Cir. 2004) (Section 1252(a)(2)(A) bars jurisdiction unless § 1252(e) restores it where the underlying claim "ask[s] to nullify the continuing effects of that order").

Section 1252(a)(2)(A) therefore eliminates the general federal question statute, 28 U.S.C. § 1331, as a basis for district court jurisdiction and restricts any challenge to an expedited removal order under section 1225(b)(1) to the means provided in section 1252(e). *See Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018) (phrase "notwithstanding any other provision of law" in jurisdictional provision encompasses 28 U.S.C. § 1331); see also *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) (the use of a "notwithstanding" clause "clearly signals the drafter's intention that the

9

provisions of the 'notwithstanding' section override conflicting provisions of any other section" and that "a clearer statement is difficult to imagine.").

As such, Section 1252(e) permits two limited types of judicial review related to orders of expedited removal. First, Section 1252(e)(2) provides for jurisdiction in habeas to review expedited removal orders, limited to three discrete issues: (1) whether the petitioner is an alien; (2) whether the petitioner was ordered removed under an expedited removal order; and (3) whether the petitioner can prove that he or she has lawful status in the United States as an asylee, refugee, or permanent resident. *See Alvarado-Herrera*, 993 F.3d at 1192 (quoting § 1252(e)(2)). "In determining whether an alien has been ordered removed under" the expedited removal provisions, "the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner," and "[t]here shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." *Id.* § 1252(e)(5). It is only these three issues that can be raised in a habeas corpus proceeding, but these three issues are not areas of dispute as it concerns Dr. Alawieh. *Id.*

Here, Dr. Alawieh is an alien, she is not a United States citizen. Dr. Alawieh is subject to an Expedited Removal Order. *See Exhibit A.* And Dr. Alawieh is not an asylee, refugee, or a permanent resident. Accordingly, the Court's review of any other aspect of the Expedited Removal Order is foreclosed by 8 U.S.C. 1252(e)(1) which definitively states that "[w]ithout regard to the nature of the action or claim … no court may enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in [Section 1252(e)(2)]." Because Petitioner's claims for violations of the Due Process Clause, the APA, or the INA do not fall

within one of the limited circumstances allowing for judicial review of expedited removal proceedings, the Court lacks jurisdiction in this case.

Courts within this district and around the country recognize the narrow judicial review available in habeas for Expedited Removal orders and routinely dismiss petitions like the one before the Court. *See also Arandi v. Morgan,* No. 19-cv-12351-RGS, 2020 WL 1891949, at * 1 (D. Mass. Apr. 16, 2020) (under 8 U.S.C. § 1252(a)(2)(A) and Section 1252(e), court lacked jurisdiction to review expedited removal order by CBP of alien who attempted entry into the U.S. with a valid F-1 student visa to study at Harvard); *Viana Santos v. McAleenan*, 392 F. Supp. 3d 192, 194 (D. Mass. 2019) (Insofar as Petitioners challenge the validity of the expedited removal scheme, their challenge fails because 'an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.'" *quoting Landon v. Plasencia*, 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982)); *Khelghatdoost v. Murdock*, No. 3:23-CV-0079-B, 2023 WL 172033, at *2 (N.D. Tex. Jan. 11, 2023) (Finding no jurisdiction over claim from F-1 visa holder who argued his expedited removal was improper because such claim "does not fall within the limited jurisdiction afforded the Court on habeas corpus petitions.") *Banci v. Nielson,* 312 F. Supp. 3d 729, 736 (W.D. Tex. 2018) (court has no jurisdiction to review expedited removal order under 8 U.S.C. § 1252(e)).

The fact that Petitioner does not challenge the order itself, but rather the process employed to reach it does not restore jurisdiction. Judicial review is barred regarding the merits of the determinations underlying Expedited Removal orders as well. This is because Section 1252(a)(2)(A) divests a district court of the power to review "any determination … arising from or relating to the implementation or operation of an order of removal pursuant to section

1225(b)(1).  Section 1252(a)(2)(A) sweeps even wider, also barring judicial review of "any other cause or claim *arising from or relating to* the implementation or operation of an order pursuant to section 1225(b)(1)." (Emphasis added). The concepts of "arising from" and "or relating to" are not casual constructs, but legislative words borrowed from contract law to signify as broad a range of causation as can be legally contemplated. *See, e.g., United Nat'l Ins. Co. v. Penuche's Inc.*, 128 F.3d 28, 31-32 (1st Cir. 1997) (discussing "the concept of 'arising out of'"); *Metropolitan Prop. & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co.*, 58 Mass. App. Ct. 818, 820-821 (2003) (same).

As such, this Court lacks jurisdiction to review CBP's inadmissibility determination that led to the Expedited Removal Order.  *See Arandi,* 2020 WL 1891949, at * 1, *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1159 (9th Cir. 2022) (collecting cases finding that Section 1252(e)(2) does not allow a court to evaluate the merits of the determinations underlying an expedited removal order); *Pineda v. Customs & Border Prot*., 544 F. App'x 925, 926 (11th Cir. 2013).  Her challenge to the Expedited Removal order therefore must be dismissed.

It is of no moment that Dr. Alawieh also purports to bring an APA claim change the outcome here. The APA is not a jurisdiction-conferring statute.  *Califano v. Sanders*, 430 U.S. 99, 107 (1977).  Rather, jurisdiction to hear APA claims is typically granted under the general federal-question statute, 28 U.S.C. § 1331. *Califano*, 430 at 107, n.7.  But the APA itself explains that it does not apply "to the extent that ... statutes preclude judicial review."  5 U.S.C. § 701(a)(1); *accord Webster v. Doe*, 486 U.S. 592, 599 (1988) ("Section 701(a) ... limits application of the entire APA to situations in which judicial review is not precluded by statute."); *Arandi,* 2020 WL 1891949, at * 1 (where court lacks jurisdiction to review expedited removal order, APA does not extend such jurisdiction). IIRIRA, which added the jurisdiction-stripping provisions in section

1252, is just such a statute, and accordingly the APA itself disclaims any jurisdiction to hear Dr. Alawieh' claims under § 706. *See also Block v. Comty. Nutrition Inst.*, 467 U.S. 345, 345 (1984) (observing that APA "confers a general cause of action upon persons 'adversely affected or aggrieved by agency action within the meaning of a relevant statute,'" but "withdraws that cause of action to the extent the relevant statute 'precludes judicial review'") (5 U.S.C. §§ 701(a)(1) & 702). Thus, that Dr. Alawieh might separately have a *cause of action* under the APA, if in fact the Court has jurisdiction, is beside the point. The Court first must conclude that it has jurisdiction before addressing the merits of Petitioner's APA claims. As set forth above, it does not.

### B.  This Court Lacked Jurisdiction to Enter Stay of Removal

As part of her Petition, Petitioner asked the Court to stay the execution of Dr. Alawieh' s removal order.  However, this Court is without jurisdiction to offer such relief as 8 U.S.C. § 1252(g) precludes a district court from staying orders removal.  Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by ... any alien arising from the decision or action by [DHS] to ... *execute removal orders against any alien*." (emphasis added).  This provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title." *Id.*

Courts within this district, and around the country, routinely hold that they lack jurisdiction to enter an order staying removal based on section 1252(g)'s plain language.  *See e.g., Tejada v. Cabral,* 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—be they stays or permanent injunctions—were to be issued by the appropriate courts of appeals."); *Aziz v. Chadbourne*, No. CIV.A.07-11806-GAO, 2007 WL 3024010, at *1 (D. Mass. Oct. 15, 2007) ("[a]ny stay of the final order of removal would squarely

interfere with the execution of the removal order."); *Martin v. U.S. Immigration & Customs Enf''t*, No. CIV.A. 13-11329-DJC, 2013 WL 3282862, at *3 (D. Mass. June 26, 2013) ("this Court lacks authority to issue a stay of a final order of removal."); *Nelson v. Hodgson*, No. CIV.A. 14-10234-DJC, 2014 WL 2207621, at *2 (D. Mass. May 27, 2014) (the "provisions of the REAL ID Act preclude this court from entering an order staying petitioner's removal."); *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *3 (D. Mass. Oct. 1, 2018) (same); *Compere v. Riordan*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019) (same); *Lopez Lopez v. Charles*, No. 12-CV-101445-DJC, 2020 WL 419598, at *4 (D. Mass. Jan. 26, 2020) (same).

Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm*., 525 U.S. 471, 485 n.9 (1999).  Indeed, Petitioner's "requested relief, a stay from removal, would necessarily impose a judicial constraint on immigration authorities' decision to execute the removal order, contrary to the purpose of § 1252(g)." *Viana v. President of United States*, No. 18-CV-222-LM, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018), *aff'd sub nom. Viana v. Trump*, No. 18-1276, 2018 WL 11450369 (1st Cir. June 18, 2018).  Accordingly, this Court lacked jurisdiction to issue a stay of removal under Section 1252(g).

### C.  Petitioner Cannot Seek a Stay via a Writ of Habeas Corpus

Again, in addition to release under habeas, Petitioner seeks a stay of removal and injunctive relief in the habeas Petition.  Nonetheless, this is not the type of relief that the Supreme Court found to be subject to habeas review.  *See Thuraissigiam*, 140 S. Ct. at 1970 (holding that the relief sought, which did not include release, fell "outside the scope of the common-law habeas writ").  In reversing the Ninth Circuit's decision, the Supreme Court concluded that habeas has been historically used to challenge confinement and detention.  *Id*. at 1969–70.  In *Thuraissigiam*, the

petitioner did not seek "simple release," and if he had sought proper habeas relief, it would take the form of release "in the cabin of a plane bound for [the designated country]." *Id.* at 1970. Other circuits have followed this principle. *See*, *e.g.*, *Tazu v. AG United States*, 975 F.3d 292, 300 (3d Cir. 2020) ("And Tazu's constitutional right to habeas likely guarantees him no more than the relief he hopes to avoid—release into 'the cabin of a plane bound for Bangladesh.'") (brackets omitted). In short, the Supreme Court has taken a "narrow view of habeas relief in the immigration context, which supports [a] reluctance to extend habeas relief to aliens who are released from detention." *See Bacilio-Sabastian v. Barr*, 980 F.3d 480, 483 (5th Cir. 2020) (citing *Thuraissigiam*, 140 S. Ct. at 1963). Accordingly, this Court should dismiss the Petition.

### D. Petitioner's Due Process Claims Fail

Petitioner, without explanation, contends that her detention violates the Fifth Amendment's Due Process Clause. However, these undeveloped claims fail, as Petitioner was an applicant for admission to the United States, and therefore only enjoyed the rights established by statute. As stated above, arriving aliens applying for admission at the border thus lack any constitutional due process rights with respect to admission: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Mezei*, 345 U.S. at 212 (1953), and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination". *Shaughnessy*, 338 U.S. at 543 (1950). The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam*, explaining that an individual who was an applicant for admission—like Petitioner— "has only those rights regarding admission that Congress has provided by statute." 591 U.S. 103, 139-40 (2020). Here by statute, Dr. Alawieh was not entitled to release from detention via a bail hearing but could seek protection from removal if she claimed a fear of

persecution if deported, but she did not make such claim.  Dr. Alawieh, while not explicit, may

be attempting to raise a due process challenge to a lack of counsel during the expedited removal

process, but by statute, there is no right to an attorney and the only reference to consulting with

counsel is for those individuals who have claimed a fear of persecution and are preparing for an

interview with an asylum officer, but this does not apply to Dr. Alawieh.  *See* 8 U.S.C. §

1225(b)(1)(B)(iv).  Even if Dr. Alawieh was raising a colorable constitutional claim, as the Ninth

Circuit recently held in the context of a right to counsel claim made by an individual subject to

an expedited removal order, "we nonetheless lack jurisdiction to review [such a] petition because

of the Supreme Court's decision in *Thuraissigiam* …".  *Guerrier v. Garland*, 18 F.4th 304, 311

(9th Cir. 2021).   As such, Petitioner's conclusory Due Process claim must be dismissed as Dr.

Alawieh was not entitled to any additional process other than that set forth in statute which she

received.

### E.  Dr. Alawieh's Claim is Moot

Dr. Alawieh asked this Court to enter a writ of habeas corpus to release her from CBP

custody.  *See* Dkt. No. 1, p. Prayers for Relief, (3).  As Dr. Alawieh is no longer in CBP custody,

the Petition is moot and subject to dismissal.  "Habeas is at its core a remedy for unlawful executive

detention."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008).   The writ of habeas corpus and its

protections are "strongest" when reviewing "the legality of Executive detention."  *INS v. St. Cyr*,

533 U.S. 289, 301 (2001).  Therefore, the traditional function of the writ is to seek one's release

from unlawful detention.  *Thuraissigiam*, 140 S. Ct. 1959, 1969 (2020) (citing *Preiser v.

Rodriguez*, 411 U.S. 475, 484 (1973)).  As the Supreme Court has held, relief other than "simple

release" is not available in a habeas action.  *See Thuraissigiam*, 140 S. Ct. at 1970–71 ("Claims so

far outside the core of habeas may not be pursued through habeas.") (internal quotations and

citations omitted).  This custodial requirement is consistent with the traditional understanding of habeas relief. *See, e.g., Preiser,* 411 U.S. at 484 ("It is clear … from the common-law history of the writ … that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody").

Dr. Alawieh has been released from CBP custody and removed from the United States pursuant to an Expedited Removal Order.  *See Exhibit A.*  As such, Plaintiff's claim for habeas relief is moot.  *See Gicharu v. Moniz,* No. CV 23-11672-MJJ, 2023 WL 5833115, at *1 (D. Mass. Sept. 8, 2023), *aff'd,* No. 23-1818, 2024 WL 4493395 (1st Cir. May 8, 2024), *cert. denied,* No. 24-445, 2024 WL 5112311 (U.S. Dec. 16, 2024), *reh'g denied,* No. 24-445, 2025 WL 299595 (U.S. Jan. 27, 2025) (Dismissing habeas and colleting cases finding that removal from the United States "moots [the] petition for release from ICE custody because the Court can no longer provide the requested relief."). *Omondiagbe v. McDonald*, No. CIV.A. 13-11182-MBB, 2014 WL 1413560, at *1 (D. Mass. Apr. 10, 2014) ("Because the petition seeks only immediate release from the unlawful detention as well as to prevent respondent from transferring petitioner "to a detention facility outside the jurisdiction" of the court (Docket Entry # 1), his release and removal from the United States renders the petition moot

Indeed, Article III of the Constitution limits federal courts' jurisdiction to certain "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).  An actual

controversy must exist at all stages of review, not merely when the complaint is filed. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016), *as revised* (Feb. 9, 2016).

"When a case is moot—that is, when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome—a case or controversy ceases to exist, and dismissal of the action is compulsory." *Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001); *see also Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)). A claim will be considered no longer "live" when a court cannot provide effectual relief because no justiciable case remains. *Oakville Dev. Corp. v. FDIC*, 986 F.2d 611, 613 (1st Cir. 1993). A court is prohibited from issuing an advisory opinion, so a moot case must be dismissed. *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003). Accordingly, the Petition should be dismissed as there is no relief the Court can issue.

### F. CBP did Not Willfully Ignore this Court's Stay Order

Although Petitioner maintains that CBP ignored this Court's Stay of Removal Order, such is not the case when taken in context of the timing of its receipt of said order. Respondents attach a declaration from John W. Wallace, a Watch Commander with CBP with current duty station at Logan Airport. *See Exhibit C.* On March 14, 2025, Watch Commander Wallace was on duty with a scheduled shift from 1500-2400 hrs. *Id.,* ¶ 5. Per Watch Commander Wallace, all international flights at Logan Airport operate out of Terminal E. *Id.,* ¶ 6. As part of CBP's operations at Terminal E, CBP maintains a small office with walk-up window service, commonly referred to as the Entry & Clearance (E&C) desk. *Id.* On a typical day, the E&C desk manages a high volume of calls and walk-ins from airlines, the public, the port authority, various law enforcement agencies, lawyers, and government officials. *Id.* Many individuals approach the window seeking information about travelers, which CBP does not disclose for privacy reasons. *Id.* Additionally,

individuals will often inform the E&C desk officer that they are counsel for a subject undergoing an inspection or admissibility determination. *Id.* However, individuals undergoing a CBP inspection do not have a right to counsel during the CBP inspection or admissibility determination process. *Id.*

The E&C desk is not always staffed due to ongoing operations within the federal inspection area. *Id.* ¶ 7. At times, the E&C desk is temporarily closed when officers go on breaks or are reassigned to support other areas of CBP's operation. *Id.* When the E&C desk is unmanned, all calls received at that desk are forwarded to another location and members of the public are notified to direct their inquiries to CBP's main telephone line. *Id.* Per CBP's practice at Logan Airport, if a court order is issued that affects CBP operations at Logan, the court order would be provided to Logan Airport management through the Boston Field Office or CBP's legal counsel. *Id.* ¶ 8. Court orders, as well as all matters pertaining to litigation against CBP, are directed to CBP counsel for their review and determination on next steps. *Id.* As explained by Watch Commander Wallace, CBP takes court orders seriously and strives to always abide by a court's order. *Id.* ¶ 9. As it concerns this matter, Watch Commander Wallace states that due to the extremely close timing between the issuance of the court order in this case and boarding time of Air France flight number 333, CBP did not receive the court's order until after the flight departed the United States. *Id.*

Watch Commander Wallace recounts that at approximately 1900 hrs, he was notified that an individual who identified herself as counsel for Rasha Alawieh, arrived at the E&C desk and informed the officer that she filed a petition with the court requesting that Ms. Alawieh not be removed from the United States. *Id.* ¶ 10. As this was only a petition, no action was taken until CBP received an order from the court through the proper channels, or until CBP was provided with documentation that could be forwarded to CBP legal counsel for their review and guidance on the

appropriate course of action. *Id.* Watch Commander Wallace states that this approach is CBP's standard procedure, as individuals often approach the window at the E&C desk or call CBP's main telephone line referring to legal matters that may not materialize or may involve a filing with the immigration court or U.S. Citizenship and Immigration Services. *Id.*

At approximately 1920 hrs, Watch Commander Wallace, along with two other officers escorted Dr. Alawieh to the boarding area for her departing flight onboard Air France 333. *Id., ¶* 11. Dr. Alawieh was issued a boarding pass by Air France personnel and was permitted to board the plane at approximately 1930 hrs. *Id., ¶* 12. At approximately 1940 hrs, the aircraft doors closed, and the jet bridge was detached from the aircraft. *Id.* ¶ 13. Air France flight 333 departed Logan Airport at approximately 1943 hrs. *Id.* ¶ 14.

Watch Commander Wallace recounts that he was informed, at approximately 2010 hrs, that an individual arrived at CBP's E&C desk, opened her laptop, and showed the officer what she claimed to be a court order requiring the stay of Dr. Alawieh. *Id.* ¶ 15. CBP personnel advised this individual that CBP needed a copy of the court order to forward to CBP counsel for review and appropriate action. *Id.* ¶ 16. CBP advised this individual that Air France flight 333 had departed at that time as well. *Id.* ¶ 17. Watch Commander Wallace states that at approximately 2020 hrs, the Area Port Director informed him that CBP counsel had received the Court's stay order through the U.S. Attorney's Office, District of Massachusetts. *Id.* ¶ 18. Per Watch Commander Wallace, at that time, however, Dr. Alawieh had already departed the United States. *Id.*

Based upon the above, Respondents contend that CBP did not willfully disobey the Court's order by effectuating her Expedited Removal Order.

## **CONCLUSION**

For the reasons stated herein, the Court should deny the Petition and dismiss the case.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: March 17, 2025                 By:       */s/ Michael Sady*
                                              MICHAEL SADY
                                              MARK SAUTER
                                              Assistant U.S. Attorneys
                                              United States Attorney's Office
                                              1 Courthouse Way, Suite 9200
                                              Boston, MA  02210
                                              617-748-3100
                                              michael.sady@usdoj.gov

## LOCAL RULE 7.1 CERTIFICATION

Since this is a Response to a Petition and due to time constraints, counsel has not conferred with the Petitioner in advance of filing this Response.

                                              */s/ Michael Sady*
                                              MICHAEL SADY
                                              Assistant U.S. Attorney