# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| YARA CHEHAB,<br>As Next Friend of Rasha Alawieh<br><br>　　　　Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>　　　　Respondents. | Case No. 1:25-cv-10614<br><br>DECLARATION OF<br>JOHN W. WALLACE |

In accordance with 28 U.S.C. § 1746, I, John W. Wallace, declare and state as follows:

1. I am a Watch Commander with U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I entered on duty as a CBP Officer in January of 2015.

2. I have occupied the position of Watch Commander since August of 2022, and my current duty station is General Edward Lawrence Logan International Airport (Logan Airport) in Boston, Massachusetts.

3. I have prepared this declaration at the request of the U.S. Attorney's Office, District of Massachusetts, in connection with the above-captioned Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief filed by Petitioner Yara Chehab, as Next Friend of Rasha Alawieh.

4. The statements I make herein are based on my personal knowledge and on information that I obtained during the performance of my official duties as a CBP Watch Commander at Logan Airport.

5. On March 14, 2025, I was on duty at Logan Airport and my scheduled shift was 1500 - 2400 hrs.

6. All international flights at Logan Airport operate out of Terminal E. As part of CBP's operations at Terminal E, CBP maintains a small office with walk-up window service, commonly referred to as the Entry & Clearance (E&C) desk. On a typical day, the E&C desk manages a high volume of calls and walk-ins from airlines, the public, the port authority, various law enforcement agencies, lawyers, and government officials. Many individuals approach the window seeking information about travelers, which we do not disclose for privacy reasons. Additionally, individuals will often inform the E&C desk officer that they are counsel for a subject undergoing an inspection or admissibility determination. However, individuals undergoing a CBP inspection do not have a right to counsel during the CBP inspection or admissibility determination process.

7. The E&C desk is not always staffed due to ongoing operations within the federal inspection area. At times, the E&C desk is temporarily closed when officers go on breaks or are reassigned to support other areas of CBP's operation. When the E&C desk is unmanned, all calls received at that desk are forwarded to another location and members of the public are notified to direct their inquiries to CBP's main telephone line.

8. In the event that a court order is issued that affects CBP operations at Logan Airport, the court order would be provided to Logan Airport management through the Boston Field Office or CBP's legal counsel. Court orders, as well as all matters pertaining to litigation against CBP, are directed to CBP counsel for their review and determination on next steps.

9. At no time would CBP not take a court order seriously or fail to abide by a court's order. Due to the extremely close timing between the issuance of the court order in this case and boarding time of Air France flight number 333, CBP did not receive the court's order until after the flight departed the United States.

10. At approximately 1900 hrs, I was notified that an individual who identified herself as counsel for Rasha Alawieh, arrived at the E&C desk and informed the officer that she filed a petition with the court requesting that Ms. Alawieh not be removed from the United States. As this was only a petition, no action would be taken until we received an order from the court through the proper channels, or until we were provided with documentation that could be forwarded to CBP legal counsel for their review and guidance on the appropriate course of action. This is our standard procedure, as individuals often approach the window at the E&C desk or call CBP's main telephone line referring to legal matters that may not materialize or may involve a filing with the immigration court or U.S. Citizenship and Immigration Services.

11. At approximately 1920 hrs, I along with two other officers escorted Ms. Alawieh to the boarding area for her departing flight onboard Air France 333.

12. Ms. Alawieh was issued a boarding pass by Air France personnel and was permitted to board the plane at approximately 1930 hrs.

13. At approximately 1940 hrs, the aircraft doors closed, and the jet bridge was detached from the aircraft.

14. Air France flight 333 departed Logan Airport at approximately 1943 hrs.

15. At approximately 2010 hrs, I was informed that an individual arrived at our E&C desk, opened her laptop, and showed the officer what she claimed to be a court order requiring the stay of Ms. Alawieh.

16. The individual was informed that we would need a copy of the court order to forward to CBP counsel for review and appropriate action.

17. In order to attempt to address the individual's request, she was asked for the flight details, as we cannot disclose information about the traveling public. The individual informed the CBP officer that the subject of the court order was supposed to depart the United States onboard Air France flight 333. The officer then informed the individual that the flight had already departed. The individual then exited the E&C area, taking a few pictures and collecting names of CBP staff.

18. At approximately 2020 hrs., after the individual departed the E&C desk, I was informed by the Area Port Director that CBP counsel received the court's stay order through the U.S. Attorney's Office, District of Massachusetts. At that time, however, Ms. Alawieh had already departed the United States.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed in Boston, Massachusetts on this 16th day of March 2025.

JOHN W WALLACE
Digitally signed by JOHN W WALLACE
Date: 2025.03.16 18:41:29 -04'00'

John W. Wallace
Watch Commander
U.S. Customs and Border Protection
Department of Homeland Security