UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RASHA ALAWIEH,<br><br>*Petitioner-Plaintiff*,<br><br>v.<br><br>[FIRST NAME UNKNOWN] TWEEDIE, Officer of U.S. Customs and Border Protection at the Boston Logan International Airport; [FIRST NAME UNKNOWN] KANE, Officer of U.S. Customs and Border Protection at the Boston Logan International Airport; CAROLINE R. TULLY, Officer of U.S. Customs and Border Protection at the Boston Logan International Airport; JOHN/JANE DOE, Acting Field Office Director of the Boston Field Office of U.S. Customs and Border Protection; PETER R. FLORES, Acting Commissioner, U.S. Customs and Border Protection; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General, U.S. Department of Justice,<br><br>*Respondents-Defendants, all named in their official capacities.* | Case No. 1:25-cv-10614 (LTS) |

## FIRST AMENDED HABEAS PETITION AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. Petitioner-Plaintiff, Dr. Rasha Alawieh ("Dr. Alawieh" or "Petitioner"), is a 34-year-old doctor and specialist in transplant nephrology who sought to return to the United States on March 14, 2025, after a brief visit to see family in Lebanon. She hoped to return to the U.S. to resume life-saving and life-changing care for vulnerable patients in Rhode Island on the basis of her H-1B employment visa, sponsored by Brown University Health (the Alpert Medical School of Brown

1

University).

2. Instead of allowing Dr. Alawieh to enter the U.S. to continue providing care to vulnerable patients in the United States and to train future physicians—agents of U.S. Customs and Border Protection ("CBP") took custody of Dr. Alawieh and removed her from the United States without lawful authority or due process.

3. There has been media coverage to date concerning the questioning of Dr. Alawieh, who is a devout Shia Muslim, by CBP officers at Boston Logan International Airport.[1] The claims in this case do not concern that questioning. This case turns on whether (1) the role and authority of the CBP officers and (2) the procedures that they applied to their engagement with Dr. Alawieh violate the requirements of our Constitution.

4. The CBP officers who engaged with Dr. Alawieh at Boston Logan International Airport are in positions of continuing employment and were never appointed by the President or the head of any Department. They exercised unilateral and administratively unreviewable authority to refuse to let Dr. Alawieh enter the country: holding her in custody and ordering her expedited removal from the United States, resulting in cancellation of her visa and a five-year bar against re-entering the country.

5. These assertions of sovereign authority violate the Appointments Clause, one of "the significant structural safeguards of the constitutional scheme." *Edmond v. United States*,

---

[1] That media coverage occurred notwithstanding an emergency order sealing the government's March 17, 2025, filing in the case—*see* ECF Nos. 16, 20, 21, 30, 31. Counsel for Dr. Alawieh had sought that emergency sealing order in an abundance of caution, given counsel's not yet having been able to confer meaningfully with Dr. Alawieh by the time of the government's March 17, 2025, filing, due to CBP's holding her *incommunicado* on March 14, 2025, and its subsequent expedited removal of her to Lebanon. Nonetheless, the media somehow managed to access the filing and report on its contents. Dr. Alawieh does not seek to keep the government's March 17, 2025, filing, ECF No. 16, sealed but reserves the right to seek sealing of filings and/or a protective order in the future, should circumstances in this case warrant that. Dr. Alawieh otherwise takes no position at this time on the ongoing applicability of Federal Rule of Civil Procedure 5.2(c) to this case.

520 U.S. 651, 659 (1997). To ensure public accountability, the Framers required that all Officers exercising significant executive authority be appointed by the President with the advice and consent of the Senate, or, where Congress authorizes and the Officer is an inferior Officer, by the "Heads of Departments," the President, or courts of law. *Id.* at 659–60; U.S. Const. art. II, § 2, cl. 2. This structure ensures that the President is politically accountable for the actions of federal officials who exercise ongoing power to make significant decisions on behalf of the United States, as well as ensuring that the independent and significant exercise of government power is not delegated more broadly than is appropriate. The Supreme Court has repeatedly held that the exercise of ad- judicative power like that exercised here is reserved to appointed Officers of the United States, and the Judiciary has likewise recognized that the power to issue final determinations to remove some- one from the country is a matter of the utmost significance.

6. Dr. Alawieh's experience exemplifies why permitting non-appointed employees to make life-altering decisions, insulated from any review, is inconsistent with our constitutional system. Any officer wielding such significant power must, at the very least, hold that office in a manner consistent with the Appointments Clause. As the CBP officials who ordered Dr. Alawieh removed were not so appointed, their expedited removal order against Dr. Alawieh is void *ab initio.*

7. In any event, Dr. Alawieh should have received a fair hearing before an immigration judge instead of being subjected to expedited removal—because her over-six-and-a-half-years of lawful presence, training, and employment in the United States vested her with due-process rights that render the application of expedited removal to her unlawful. *See, e.g., Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 166–78 (finding jurisdiction over the petitioner's claims under the Suspension Clause, in part, because of the nature of their ties to the United

States).

8. Transplant nephrology is a highly specialized practice that, in the United States, reflects a "workforce-clinical[-]demand mismatch"—meaning that there is more need for transplants than there are specialized physicians like Dr. Alawieh to help meet the needs.[2] This is precisely why Brown University Health sponsored her for an H-1B visa: to enable her to provide highly specialized and critical care to vulnerable patients whose needs cannot otherwise be met through the U.S. workforce.[3]

9. For patients and their loved ones, the stakes of transplant nephrology are extremely high. Patient testimonials convey why.[4] Kidney transplants save lives and can also vastly improve quality of life,[5] by obviating the need for dialysis, a treatment option that, while

---

[2] According to the medical journal *Kidney Medicine*, "There were 245,506 individuals with a functioning
kidney transplant in the United States in 2021 and approximately 800 transplant nephrologists, indicating a potential workforce–clinical demand mismatch." *See* Sridhar, Pivert, Mohottige, Campbell
and Farouk, *Why not Transplant Nephrology? A Survey of US Nephrology Fellows*, KIDNEY MEDICINE, Apr. 10, 2025, https://www.kidneymedicinejournal.org/article/S2590-0595(25)00039-1/fulltext.

[3] *See* U.S. DEP'T OF LABOR, Wage and Hour Division, *H-1B Program – Overview*, https://www.dol.gov/agencies/whd/immigration/h1b ("The H-1B program applies to employers seeking to hire nonimmigrant [non-citizens] as workers in specialty occupations . . . A specialty occupation is one that requires the application of a body of highly specialized knowledge and the attainment of at least a bachelor's degree or its equivalent. The intent of the H-1B provisions is to help employers who cannot otherwise obtain needed business skills and abilities from the U.S. workforce by authorizing the temporary employment of qualified individuals who are not otherwise authorized to work in the United States.").

[4] *See, e.g.*, NAT'L KIDNEY FOUND., *Patient Stories*, https://www.kidney.org/news-stories?f%5B0%5D=type%3A52732.

[5] *See, e.g.*, Yiman Wang, et al., *Mapping health-related quality of life after kidney transplantation by group comparisons: a systematic review*, NEPHROLOGY DIALYSIS TRANSPLANTATION, Vol. 36, Issue 12 (Dec. 2021) (Pages 2327–2339) ("[Kidney transplant recipients] report a 30% higher physical activity level than the pre-transplant level[,] and this increase in physical activity persists until 5 years after successful [kidney transplant] . . . [Kidney transplant recipients] report less fatigue, decreased frequency of depressive symptoms, better sleep quality and less pain and immobility . . .

4

indisputably needed for many, can be notoriously brutal on patients and their loved ones.[6]

10. Dr. Alawieh was one of only three transplant nephrologists in Rhode Island. In the course of the media coverage about Dr. Alawieh, physicians at Brown University Health who have supervised her and/or who hired her have stressed that "'[h]er absence is really detrimental to our program,'" and that she "''is a first-class human being—a very talented physician—and it will be America's loss if we can't have her back in Rhode Island.'"[7]

11. Because of the dire patient needs this case implicates, Dr. Alawieh respectfully requests urgent resolution of her Constitutional claims and provision of the relief she seeks herein, including: the vacatur of her expedited removal order, the reinstatement of her H-1B visa (entry permit), an order for her return to the United States, the institution of removal proceedings before an immigration judge on the question of her admissibility into the United States, and a pre-deprivation hearing on the question of whether immigration confinement of her within the interior of the United States would be the least restrictive means of addressing any putative danger to the community and/or risk of flight from immigration enforcement that the government claims she presents.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the claims alleged in this Petition pursuant

---

[Kidney transplantation] can have a positive impact on [social function]," including by improving the ability to undertake desired employment, leisure activities, and religious activities.) (footnoted references omitted), https://academic.oup.com/ndt/article/36/12/2327/6335681.

[6] *See, e.g.*, Michael Rothstein, *I need a kidney: From NFL pass-rusher to dialysis in a year*, ESPN, Feb. 24, 2019 (detailing debilitation and disablement experienced as a result of kidney disease, as well as the considerable demands and toll of dialysis as a treatment), https://www.espn.com/nfl/story/_/id/26047187/i-need-kidney-nfl-pass-rusher-dialysis-year.

[7] Michael Casey, *Homeland Security says professor deported to Lebanon with US visa supported Hezbollah*, ASSOCIATED PRESS, Mar. 18, 2025, https://apnews.com/article/trump-immigration-doctor-deportation-82da65b55159243df4fd27b8be47db87.

to 8 U.S.C. § 1252(e)(2)(B) because, among other reasons, Dr. Alawieh challenges "whether [she] was ordered removed" under 8 U.S.C. § 1225(b)(1). *Dugdale v. U.S. Customs & Border Protection*, 88 F. Supp. 3d 1, 6 (D.D.C. 2015), *aff'd sub nom. Dugdale v. Lynch*, 672 F. App'x 35 (D.C. Cir. 2016); *see also, e.g.*, *Thuraissigiam v. Dep't of Homeland Sec.*, 917 F.3d 1097, 1104 (9th Cir. 2019) (whether CBP had authority to issue order against petitioner "fairly encompassed" by § 1252(e)(2)(B)), *rev'd on other grounds sub nom. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). The scope of review under § 1252(e)(2)(B) encompasses claims that a purported expedited removal order was invalid on its face or "was not lawfully issued due to some procedural defect." *Dugdale*, 88 F. Supp. 3d at 6 (citing *Am.-Arab Anti-Discrimination Comm. v. Ashcroft*, 272 F. Supp. 2d 650, 663 (E.D. Mich. 2003)).

13. The Court also has jurisdiction over Count I under the federal question statute, 28 U.S.C. § 1331, because Dr. Alawieh challenges the validity of the expedited removal order under the Appointments Clause of the U.S. Constitution. *See Free Enter. Fund v. Pub. Co. Acct. Over- sight Bd.*, 561 U.S. 477, 489 (2010) (holding that courts have jurisdiction to consider an Appointments Clause claim where a finding to the contrary would "foreclose all meaningful judicial re-view," the suit is "wholly collateral to a statute's review provisions" in that the petitioner could not first seek review from the agency, and the claim is "outside the agency's expertise" (internal quotation marks and citations omitted)).

14. Count II arises under the Suspension Clause, U.S. Const. Art. I, Section 9, Clause 2.

15. Count III arises under the federal question statute, 28 U.S.C. § 1331, because Dr. Alawieh brings a claim under the Administrative Procedure Act.

16. The Court possesses remedial authority under 28 U.S.C. §§ 2201, 2202 (declaratory and related, further relief); 28 U.S. § 1651 (All Writs Act); and U.S.C. §§ 701–06

(Administrative Procedure Act).

17. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to the claims occurred in the District of Massachusetts.

## PARTIES

18. Petitioner DR. RASHA ALAWIEH is a 34-year-old Lebanese national, devout Shia Muslim, and recent holder of an H-1B visa that had granted her the benefit of living and working in the U.S. as a transplant nephrologist and Assistant Professor at Brown University Health (the Warren Alpert Medical School of Brown University). On March 14, 2025, Respondents-Defendants ("Respondents") Tweedie, Kane, and Tully subjected her to custody at, and expedited removal from, the Boston Logan International Airport. In the course of that custody, Dr. Alawieh's next friend filed an Emergency Petition on her behalf to this Court, ECF No. 1.

19. Respondents [First Name Unknown] TWEEDIE, [First Name Unknown] KANE, and CAROLINE R. TULLY are all officers of CBP at the Boston Logan International Airport who exercised unilateral and administratively unreviewable authority to refuse to let Dr. Alawieh enter the country on March 14, 2025: holding her in custody and ordering her expedited removal from the United States, resulting in cancellation of her visa and a five-year bar against re-entering the country. They were her immediate custodians at the time of the filing of her Emergency Petition on March 14, 2025, ECF No. 1. They are each sued in their official capacities.

20. Respondent JANE/JOHN DOE (whose identity is not known to Dr. Alawieh or her counsel) is the Field Office Director for the Boston Field Office of CBP. She/He was an immediate custodian of Dr. Alawieh at the time of the filing of her Emergency Petition on

March 14, 2025. She/he is sued in her/his official capacity.

21. Respondent PETER R. FLORES is the Commissioner of Customs and Border Protection ("CBP"), which is a part of DHS. He was one of Dr. Alawieh's legal custodians at the time of the filing of her Emergency Petition on March 14, 2025, ECF No. 1. He is sued in his official capacity.

22. Respondent KRISTI NOEM is the Acting Secretary of the U.S. Department of Homeland Security ("DHS"). She was a legal custodian of Dr. Alawieh at the time of the filing of Dr. Alawieh's Emergency Petition on March 14, 2025. Secretary Noem is sued in her official capacity.

23. Respondent PAMELA BONDI is named in her official capacity as Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(g); and as such was a custodian of Dr. Alawieh at the time of the filing of her Emergency Petition on March 14, 2025.

## STATEMENT OF FACTS

24. Petitioner Dr. Rasha Alawieh, is a 34-year-old doctor and specialist in transplant nephrology who graduated from medical school and completed her residency at the American University in Beirut, Lebanon. In June 2018, she received a J-1 visa to work and study as a physician in the United States and began a series of medical fellowships at Ohio State University, the University of Washington, and Yale-Waterbury's Internal Medicine Program.

25. Dr. Alawieh completed her program at Yale in June 2024 and received a job offer to work and teach at Brown University Health, which required the institution's sponsorship of her for an H-1B visa.[8] U.S. Citizenship and Immigration Services ("USCIS")

---

[8] H-1B visas are dual-intent visas that allow both for temporary employment in the U.S. and for the intention of gaining lawful permanent residency in the U.S. *See* U.S. Dep't of State, Foreign Affairs Manual, *Temporary Workers and Trainees – H Visas*, 9 FAM 402.10-10 (A) ("[A]n H-1B

8

approved the H-1B sponsorship of Dr. Alawieh on June 17, 2024. *See* Ex. 3 of Verified Pet'n for Writ of Habeas Corpus and Compl. for Declaratory and Injunctive Relief ("Verified Pet'n"), ECF No. 2. On July 1, 2024, Dr. Alawieh began work on H-1B status as an Assistant Professor of Medicine at the Alpert Medical School of Brown University.

26. In February 2025, after over six-and-a-half years of lawful, continuous residency in the United States, Dr. Alawieh left the country to vacation and visit family in Lebanon. The U.S. embassy in Beirut, Lebon, approved her H-1B visa (entry permit) on March 11, 2025, and, three days later, she flew from Beirut to Boston, hoping to continue an exciting new chapter in her medical career.

27. Instead of allowing Dr. Alawieh to enter the U.S. to continue providing care to vulnerable patients in the United States and to train future physicians—agents of U.S. Customs and Border Protection ("CBP") took custody of Dr. Alawieh, cancelled her H-1B visa, subjected her to expedited removal.

28. Through a next friend, Dr. Alawieh filed a Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ("Emergency Petition"), ECF No. 1, at 6:43pm EDT on March 14, 2025, while she was still in CBP custody at Boston Logan International Airport. At 7:19pm EDT on March 14, 2025, the Court issued an order prohibiting Defendants from moving Dr. Alawieh outside the District of Massachusetts without first providing the Court at least 48 hours' advance notice. ECF No. 4 ("Stay of Removal").

---

nonimmigrant may have 'dual intent,' i.e., the fact that an H-1B nonimmigrant has sought permanent residence in the United States or will be seeking such status in the future does not preclude him or her from obtaining or maintaining H-1B nonimmigrant status. The applicant may legitimately come to the United States as a nonimmigrant under the H-1B classification and depart voluntarily at the end of their authorized period of stay, and, at the same time, lawfully seek to become a permanent resident of the United States without jeopardizing H-1B nonimmigrant status. Consequently, your evaluation of an applicant's eligibility for an H-1B visa must not focus on the issue of immigrant intent."), https://fam.state.gov/fam/09FAM/09FAM040210.html.

29. At 7:45pm EDT on March 14, 2025, CBP required Dr. Alawieh to board, and she did board, a flight departing Boston Logan International Airport. Dr. Alawieh is currently in Lebanon.

## ARGUMENT

30. The expedited removal order at issue here is void *ab initio* because, in purporting to issue that order, Respondents Tweedie, Kane, and Tully exercised "significant authority pur- suant to the laws of the United States," *Lucia v. Securities & Exchange Comm'n*, 585 U.S. 237, 245 (2018) (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam)), and "occupy a 'con- tinuing' position established by law," *id.* (*quoting United States v. Germaine*, 99 U.S. 508, 511 (1879)). Thus, the Constitution required these Respondents to be appointed consistent with the Appointments Clause, which they were not. *Buckley*, 424 U.S. at 126.

31. Ordering people expelled from the United States is an exercise of the core sovereign authority of the United States, and allowing low-level employees to purport to issue such an order violates the Appointments Clause, one of "the significant structural safeguards of the constitutional scheme." *Edmond*, 520 U.S. at 659. The Framers required that all Officers exercising significant executive authority be appointed by the President with the advice and consent of the Senate, or, where Congress authorizes and the Officer is an inferior Officer, by the "Heads of Departments," the President, or courts of law. *Id.* at 659–60; U.S. Const. art. II, § 2, cl. 2. This structure ensures that the President is politically accountable for the actions of federal officials who occupy continuing positions and make significant decisions on behalf of the United States, as well as ensuring that the independent and significant exercise of government power is not delegated more broadly than is appropriate. *See Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 907 (1991) (Scalia, J., concurring) (Department heads "are directly answerable to the President, who is responsible to his constituency for their

appointments and has the motive and means to assure faithful actions by his direct lieutenants.").

32. The order purporting to remove Dr. Alawieh is invalid because it could only be lawfully executed by an appointed Officer, and it was not. As the Supreme Court has made clear, any employee of the United States government who "exercise[s] significant authority pursuant to the laws of the United States" and "occup[ies] a continuing posi- tion" is an "Officer" for purposes of the Appointments Clause and thus must be properly appointed. *Lucia*, 585 U.S. at 245 (cleaned up). And any order such officials issue without appointment is a nullity. *Id.* at 251-52. Any order for removal from the United States issued by someone not ap- pointed under constitutional standards is illegal.

33. Respondents Tweedie, Kane, and Tulley illegally issued an expedited removal order to remove Dr. Alawieh from the United States. The Supreme Court has repeatedly held that the exercise of adjudicative power is reserved to Officers of the United States. *See, e.g.*, *Lucia*, 585 U.S. at 247–51; *Edmond*, 520 U.S. at 662; *Ryder v. United States*, 515 U.S. 177, 182–86 (1995); *Freytag*, 501 U.S. at 880–82. Yet the Respondent CBP officers exercised power putatively granted to them under 8 U.S.C. § 1225 to choose what to investigate, administer oaths, take testimony, render judgments about critical facts, and—most importantly—issue a final, binding removal order. This type of adjudicative power culminating in a decision with independ- ent, unreviewable and enormous significant effect cannot be constitutionally exercised by a federal employee who has not been appointed as an Officer in accordance with the Appointments Clause.

34. For well over a century, the Supreme Court has made clear that the power "to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe," is a sovereign responsibility, the "final determination"

11

of which is entrusted to "executive officers." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659–60, 664 (1892); *accord Thuraissigiam*, 591 U.S. at 138 (2020). It is self-evident, and the Supreme Court acknowledged, that removal from the country is a solemn and severe decision. *See, e.g.*, *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) ("[D]eportation is a particularly severe 'penalty.'" (citation omitted)). The unchecked devolution of this power to unappointed employees cannot be squared with the Appointments Clause.

35. This disregard for the Appointments Clause requires vacatur of the removal order issued against Dr. Alawieh and the resulting revocation of her visa, as void *ab initio*. On the question of her admissibility into the United States, Dr. Alawieh must be provided removal proceedings under 8 U.S.C. § 1229a before an Officer appointed in compliance with the Appointments Clause. See 8 U.S.C. § 1252(e)(4) (prescribing a hearing under § 1229a as a remedy when a court determines a petitioner was not ordered removed properly); *Lucia*, 585 U.S. at 251 ("[T]he 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed official.'" (citation omitted)).

36. Additionally, if 8 U.S.C. § 1252(e) strips habeas jurisdiction over Dr. Alawieh's claim that she should have been placed into removal proceedings under 8 U.S.C. § 1229a instead of being subjected to expedited removal under 8 U.S.C. § 1225(b), its application to Dr. Alawieh would violate the Suspension Clause, because of her years of presence in and ties to the United States. *See, e.g.*, *Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 166–78 (finding jurisdiction over the petitioner's claims under the Suspension Clause, in part, because of the nature of their ties to the United States).

## CAUSES OF ACTION

### COUNT I
### Claim for Writ of Habeas Corpus Under
### 8 U.S.C. § 1252(e)(2), 28 U.S.C. § 2241, and the Appointments Clause

37. Dr. Alawieh realleges and incorporates the allegations of all preceding paragraphs.

38. Dr. Alawieh was in the custody and control of Respondents at the time her next friend filed her Emergency Petition to this Court, ECF No. 1.

39. Respondents placed Dr. Alawieh in expedited removal to issue a conclusive Order of Removal against her under 8 U.S.C. § 1225(b)(1).

40. Neither the President nor the Secretary of Homeland Security appointed Respondents Tweedie, Kane, nor Tully pursuant to the Appointments Clause.

41. Because Dr. Alawieh's expedited removal order was issued by officials wielding significant authority in continuing positions who had not been appointed pursuant to the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, the determination of inadmissibility was, and order of removal was invalid and void *ab initio*. *See, e.g.*, *Dugdale*, 88 F. Supp. 3d at 6 (citing *Am.-Arab Anti-Discrimination Comm. v. Ashcroft*, 272 F. Supp. 2d 650, 663 (E.D. Mich. 2003)); *see also, e.g.*, *Thuraissigiam*, 917 F.3d at 1104 (9th Cir. 2019) (whether CBP had authority to issue order against petitioner "fairly encompassed" by § 1252(e)(2)(B)), *rev'd on other grounds sub nom. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020); *Free Enter. Fund*, 561 U.S. at 489 (holding that courts have jurisdiction to consider an Appointments Clause claim where a finding to the contrary would "foreclose all meaningful judicial re-view," the suit is "wholly collateral to a statute's review provisions" in that the petitioner could not first seek review from the agency, and the claim is "outside the agency's expertise" (internal quotation marks and citations omitted)).

## COUNT II
## Claim for Writ of Habeas Corpus Under the Suspension Clause

42. Dr. Alawieh realleges and incorporates the allegations of all preceding paragraphs.

43. Dr. Alawieh was in the custody and control of Respondents at the time her next friend filed her Emergency Petition to this Court, ECF No. 1.

44. Respondents placed Dr. Alawieh in expedited removal under 8 U.S.C. § 1225(b)(1)—where they should have instead processed her into the interior for standard removal proceedings under 8 U.S.C. § 1229a, because of her history of over-six-and-a-half-years of presence, training, and work within the United States when she sought re-entry and admission on H-1B status after a very brief trip to Lebanon to visit her family.

45. To the extent that 8 U.S.C. § 1252(e) strips judicial review of her claim that she should have been placed into removal proceedings under 8 U.S.C. § 1229(a), its application would violate the Suspension Clause, and her expedited removal order should be vacated. *See, e.g., Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 166–78 (finding jurisdiction under the Suspension Clause over the petitioner's claims, in part, because of the nature of their ties to the United States).

## COUNT III
## Claim for Relief Under 5 U.S.C. § 706

46. Dr. Alawieh realleges and incorporates the allegations of all preceding paragraphs.

47. Respondents have revoked Dr. Alawieh's H-1B visa under 22 C.F.R. § 41.122(e)(2), which authorizes revocation of a visa if the "[non-citizen] is ordered . . . removed from the United States pursuant to INA 235 [8 U.S.C. § 1225]."

48. As the removal order was or will be a nullity, the purported visa revocation cannot be authorized by 22 C.F.R. § 41.122(e)(2). Therefore, the purported revocation of Dr. Alawieh's visa is not or will not be in accordance with law, 5 U.S.C.§ 706(2)(A), and is or will be in excess of statutory authority, 5 U.S.C. § 706(2)(C).

49. Accordingly, the revocation must be held unlawful and set aside or must be enjoined from being executed.

## PRAYER FOR RELIEF

**WHEREFORE**, Dr. Alawieh requests that this Court:

A. Declare that the expedited removal order issued against her violates the Appointments Clause and/or the Suspension Clause and order Respondents to place her into removal proceedings before a properly appointed Immigration Judge in accordance with 8 U.S.C. § 1252(e)(4) and 8 U.S.C. § 1229a;

B. Order a pre-deprivation hearing requiring the government to prove by clear and convincing evidence that the immigration confinement of Dr. Alawieh within the interior of the United States would be the least restrictive means of addressing any putative danger to the community and/or risk of flight from immigration enforcement that the government claims she presents.

C. Declare that the revocation of Dr. Alawieh's H-1B visa violates the Administrative Procedure Act and order Respondents to reinstate Dr. Alawieh's H-1B visa;

D. Award Dr. Alawieh's counsel reasonable attorneys' fees under the Equal Access to Jus- tice Act, and any other applicable statute or regulation; and

E. Grant such other and further relief as the Court deems equitable, just, and proper.

Dated: May 5, 2025.

Respectfully submitted,

  */s/ Golnaz Fakhimi*
Golnaz Fakhimi
Muslim Advocates
1032 15th Street N.W. #362
Washington, D.C. 20005
Tel: (202) 655-2969

golnaz@muslimadvocates.org

/s/ *Stephanie Marzouk*
Stephanie Marzouk (M.A. Bar No. 683291)
Marzouk Law LLC
2464 Massachusetts Ste 317
Cambridge, M.A. 02140
Tel: (617) 674-2112
sym@marzouklaw.com


*Counsel for Petitioner*

**CERTIFICATE OF SERVICE**

    I, Golnaz Fakhimi, hereby certify that the foregoing document was sent electronically through the ECF system to the registered participants as identified on the Notice of Electronic Filing.

                                      */s/ Golnaz Fakhimi*
                                      Golnaz Fakhimi