## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RASHA ALAWIEH., | Civil Action No. 1:25-cv-10614-LTS |
| *Petitioner*, | |
| v. | |
| KRISTI NOEM, SECRETARY OF U.S. DEPARTMENT OF HOMELAND SECURITY, ET AL., | |
| *Respondents*. | |

## RESPONSE IN OPPOSITION TO PETITIONER'S AMENDED HABEAS CORPUS PETITION AND COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

LEAH B. FOLEY
*United States Attorney*

RAYFORD FARQUHAR
*Deputy Civil Chief*

MICHAEL SADY
MARK SAUTER
*Assistant United States Attorneys*

BRETT A. SHUMATE
*Assistant Attorney General*
Civil Division

WILLIAM C. PEACHEY
*Director,* Office of Immigration Litigation

YAMILETH G. DAVILA
*Assistant Director*

JAMES J. WALKER
*Senior Litigation Counsel*

*/s/ Kelark Azer Habashi*
KELARK AZER HABASHI
*Trial Attorney* (DC Bar #90009126)
U.S. Department of Justice: Civil Division
Office of Immigration Litigation
P.O. Box 868, Benjamin Franklin Station
Washington, D.C. 20044
202-305-3340 | Kelark.Azer.Habashi2@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION....................................................................................................................1

BACKGROUND....................................................................................................................1

   I.   Factual and Procedural Background..............................................................................1

   II.   Regulatory and Statutory Framework For Aliens Seeking Admission into the United States.....................................................................................................................................4

ARGUMENT..........................................................................................................................9

   I.   The Court Lacks Jurisdiction Over Dr. Alawieh's Expedited Removal Order Claims and Requested Relief...................................................................................................................9

      A.   Section 1252 Bars Review of this Action...................................................................9

      B.   Dr. Alawieh's claims fall outside the core of Habeas Corpus and thus she may not raise these claims in Habeas. ..................................................................................................12

   II.   Even Assuming the Court Can Reach the Merits, Dr. Alawieh's Expedited Removal Order was not issued in violation of the Appointments Clause and thus her claims must be dismissed. ...............................................................................................................................15

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. ICE*,
   510 F.3d 1 (1st Cir. 2007) ...................................................................................10

*Am. Immigration Lawyers Ass'n v. Reno*,
   18 F. Supp. 2d 38 (D.D.C. 1998) .......................................................................12

*Arandi v. Morgan*,
   2020 WL 1891949 (D.Mass., Apr. 16, 2020) .....................................................12

*Avendano-Ramirez v. Ashcroft*,
   365 F.3d 813 (9th Cir. 2004) ...........................................................................8, 11

*Brumme v. INS*,
   275 F.3d 442 (5th Cir. 2001) ..............................................................................11

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ...........................................................................................16, 17

*Califano v. Sanders*,
   430 U.S. 99 (1977) ..............................................................................................12

*Carpenito v. Wrenn*,
   2009 WL 1798149 (D.N.H. 2009) (unpublished) ...............................................15

*Castro v. United States Dep't of Homeland Sec.*,
   835 F.3d 422 (3d Cir. 2016) ...............................................................................14

*Clark v. Martinez*,
   543 U.S. 371 (2005) ..............................................................................................5

*Dep't of Homeland Sec. v. Thuraissigiam*,
   591 U.S. 103 (2020) ......................................................................................passim

*Freytag v. Commissioner*,
   501 U.S. 868 (1991) ............................................................................................19

*Dueñas v. Garland*,
   78 F.4th 1069 (9th Cir. 2023) .............................................................................18

*Gicharu v. Moniz*,
   No. CV 23-11672-MJJ, 2023 WL 5833115 (D. Mass. Sept. 8, 2023) .................14

*Gill v. Mayorkas,*
   2021 WL 3367246 (W.D. Wash., 2021)...............................................................................6

*Hamama v. Adducci,*
   912 F.3d 869 (6th Cir. 2018)............................................................................................14

*Jorgenson v. Spearman,*
   2016 WL 2996942 (C.D. Cal. May 22, 2016)..................................................................15

*Keo v. Warden of the Mesa Verde Ice Processing Center,*
   2025 WL 1029392 (E.D. Cal. 2025).................................................................................12

*Khan v. Holder,*
   608 F.3d 325 (7th Cir. 2010)............................................................................................11

*Kleindienst v. Mandel,*
   408 U.S. 753 (1972)............................................................................................................4

*Landon v. Plasencia,*
   459 U.S. 21 (1982)..............................................................................................................4

*Mayle v. Felix,*
   545 U.S. 644 (2005)..........................................................................................................15

*Mc Laughlin v. MacDonald,*
   2012 WL 2503030 (D.Mass., Aug. 22, 2012), *report and recommendation adopted,* 2012 WL
   4058060 (D.Mass., Sept. 12, 2012) (unpublished)...........................................................15

*Meng Li v. Eddy,*
   259 F.3d 1132...............................................................................................................11, 12

*Morrison v. Olson,*
   487 U.S. 654 (1988)..........................................................................................................19

*Munaf v. Geren,*
   553 U.S. 674 (2008)..........................................................................................................13

*Nishimura Ekiu v. United States,*
   142 U.S. 651 (1892)..........................................................................................................19

*Omondiagbe v. McDonald,*
   No. CIV.A. 13-11182-MBB, 2014 WL 1413560 (D. Mass. Apr. 10, 2014)....................14

*Preiser v. Rodriguez,*
   411 U.S. 475 (1973)..........................................................................................................13

*Sec. & Exch. Comm'n,*
   585 U.S. 237 (2018)....................................................................................................16, 17

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
    591 U.S. 197 (2020)..................................................................................................19

*Shaughnessy v. United States ex rel. Mezei,*
    345 U.S. 206 (1953)...................................................................................................4

*Skinner v. Switzer,*
    562 U.S. 521 (2011).................................................................................................13

*Trollope v. Vaughn,*
    2018 WL 3913922 (C.D. Cal. Aug. 13, 2018).......................................................15

*Tucker v. Comm'r,*
    676 F.3d 1129 (D.C. Cir. 2012)..............................................................................18

*Turgerel v. Mukasey,*
    513 F.3d 1202 (10th Cir. 2008)...............................................................................11

*United States v. Barajas-Alvarado,*
    655 F.3d 1077 (9th Cir. 2011).................................................................................11

*United States v. Millanes-Corrales,*
    2024 WL 2503030 (D. Ariz. May 24, 2024), *report and recommendation adopted,* 2024 WL
    2503030 (D. Ariz. May 24, 2024) (unpublished)........................................16, 17, 18

*Vaupel v. Ortiz,*
    No. 06-1103, 2007 WL 2269444 (10th Cir. Aug. 9, 2007)........................10, 11, 12

*Webster v. Doe,*
    486 U.S. 592 (1988).................................................................................................12

*Wilkinson v. Dotson,*
    544 U.S. 74 (2005)...................................................................................................13

**Statutes**

5 U.S.C. § 701(a)(1)...................................................................................................12

6 U.S.C. §251..............................................................................................................6

6 U.S.C. § 211(a).........................................................................................................6

6 U.S.C. § 211(e).........................................................................................................6

6 U.S.C. §§ 202(2).......................................................................................................5

8 U.S.C. 1252(e)(1)......................................................................................................8

iv

8 U.S.C. § 1103(a)(5) ......................................................................................................5

8 U.S.C. § 1182 ..............................................................................................................6

8 U.S.C. § 1182(a)(6)(C) ...............................................................................................7

8 U.S.C. § 1182(a)(7) .....................................................................................................7

8 U.S.C. § 1201(a)(1)(B) ...............................................................................................7

8 U.S.C. § 1201(h) ......................................................................................................6, 7

8 U.S.C. § 1225(a)(1) .....................................................................................................5

8 U.S.C. § 1225(a)(3) ..................................................................................................5, 6

8 U.S.C. § 1225(b)(1) ..................................................................................................2, 9

8 U.S.C. § 1229(a) ..........................................................................................................4

8 U.S.C. § 1252(a)(2)(A) ............................................................................................6, 7

8 U.S.C. § 1252(e)(2)(A) ................................................................................................8

8 U.S.C. § 1252(e)(4)(A) ................................................................................................8

8 U.S.C. §§ 1225(b)(1)(C) ..............................................................................................7

8 U.S.C. §§ 1252(a) ......................................................................................................12

8 U.S.C. §§ 1252(a)(2) ....................................................................................................1

28 U.S.C. § 1331 ...........................................................................................................12

**Regulations**

8 C.F.R. § 235.1(f) ..........................................................................................................5

8 C.F.R. § 235.1(f)(1) .....................................................................................................7

8 C.F.R. § 235.3(b)(2)(i) ...............................................................................................17

8 C.F.R. § 1001.1(q) ....................................................................................................5, 6

8 C.F.R. § 1003.42(f) ......................................................................................................7

22 C.F.R. § 41.122(e)(2) ...............................................................................................20

22 C.F.R. § 41.122(e)(3) .................................................................................................6

**Other Authorities**

Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"),
    Pub. L. No. 104208............................................................................................................5

## INTRODUCTION

Petitioner Dr. Rasha Alawieh has filed a First Amended Habeas Petition and Complaint ("Amended Habeas Petition") with the Court. *See* ECF No. 32. In the Amended Habeas Petition, Dr. Alawieh alleges that her expedited removal order violates the Appointments and Suspension Clauses of the United States Constitution and that the revocation of her H-1B visa violates the Administrative Procedure Act (APA). *Id.* at 10-14. For the reasons set forth below, the Court should dismiss the Amended Habeas Petition.

For one, this entire case suffers from multiple jurisdictional defects: (1) 8 U.S.C. §§ 1252(a)(2) and (e)(1) bar review of this action; and (2) Dr. Alawieh's claims fall outside the "core" of habeas corpus and thus the Court lacks habeas jurisdiction over these claims. Even if the Court found jurisdiction despite these bars, the Court should still dismiss the Amended Habeas Petition because Dr. Alawieh's claims fail on the merits. Accordingly, the Court should deny the Amended Habeas Petition and dismiss this case.

## BACKGROUND

### I.    Factual and Procedural Background.

Dr. Rasha Alawieh, a 34-years old Lebanese national, was issued an H-1B employment visa to pursue employment as a transplant nephrologist and an Assistant Professor of Medicine at Brown University Health in Providence, Rhode Island. Amended Habeas Petition, ¶¶ 1, 8, 10 n.7, 25. On March 14, 2025, Dr. Alawieh arrived at Boston Logan Airport and was inspected by U.S. Customs and Border Protection (CBP) as an applicant for admission to the United States. *See id.* ¶¶ 18, 26-27. During their inspection, CBP officers interviewed Dr. Alawieh and determined that she was inadmissible and subject to expedited removal. *See* ECF No. 16-2, Respondents' Response to Habeas Petition, Ex. B, at 6. CBP Officers detained Dr. Alawieh, canceled her H-1B visa, and

placed her on a flight to France. *Id*; ECF No. 16-3, ¶¶ 11-14.

During an interview conducted as part of its inspection, CBP questioned Dr. Alawieh about multiple photos she had on her phone of Hassan Nasrallah, a leader of foreign terrorist organization Hezbollah, as well as of Hezbollah fighters and martyrs. *Id*. at 3-5. In justifying the possession of the photos, Dr. Alawieh asserted that Nasrallah is a highly regarded religious figure in the Shia community. *Id*. at 3. Accordingly, she indicated that she supported, admired, and followed Nasrallah's religious and spiritual teachings but not his politics, in spite of Hezbollah's status as a political party in Lebanon. *Id*. at 3, 5. Likewise, Dr. Alawieh's phone contained multiple photos of Ayatollah Khamenei, the supreme leader of Iran. *Id*. at 4. When questioned on the existence of these photos on her phone, Dr. Alawieh stated that the Ayatollah is also a Shia religious leader, and she follows his religious teachings, but not his politics. *Id*. When questioned on why these multiple photos of Nasrallah, Hezbollah fighters and martyrs, and Khamenei were deleted by her 1-2 days before she arrived at Logan Airport, Dr. Alawieh stated that she did not want to give authorities the perception that she supports Hezbollah and Ayatollah politically or militarily. *Id*.

Furthermore, during the interview, Dr. Alawieh indicated she shared photos of Nasrallah and Hezbollah martyrs with others, despite her knowledge that Hezbollah has been designated by the United States as a terrorist organization. *Id*. Dr. Alawieh later informed CBP that she was saddened by the death of Nasrallah and that, while in Lebanon waiting for her H-1B visa, she attended a commemoration of his death. *Id*. at 4, 6. Dr. Alawieh also informed CBP that her family are supporters of Hezbollah. *Id*. at 5. Upon completion of the interview, CBP found Dr. Alawieh inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and issued the Expedited Removal Order pursuant to 8 U.S.C. § 1225(b)(1). *Id*. at 6. Dr. Alawieh denied experiencing persecution while in Lebanon, nor a well-founded fear of future persecution upon return to Lebanon; thus, she informed

CBP that she was not seeking asylum. *See id.*; *see also* ECF No. 16 at 7. Accordingly, at approximately 7:20 p.m. on the same day, CBP officers escorted Dr. Alawieh to the boarding area for her departing flight onboard Air France 333. *See* Respondents' Response to Habeas Petition, Ex. C, Declaration of CBP Watch Commander John W. Wallace ("Wallace Decl.") ¶ 12. At approximately 7:40 p.m., the aircraft doors closed and the jet bridge was detached from the aircraft, in which Air France 333 departed from Logan Airport at approximately 7:43 p.m. *Id.* ¶¶ 13, 14.

On the same day, the verified Petition for Writ of Habeas Corpus was filed with the Court. *See* ECF No. 1. In the Petition, Dr. Alawieh claimed that her detention violated the Fifth Amendment, the APA, and the Immigration and Nationality Act ("INA") and sought that the Court enter a stay of removal, order her release with an issuance of a writ of habeas corpus, and to permit Dr. Alawieh access to counsel. Shortly after the petition was filed, on March 14, 2025, at approximately 7:15 p.m., the Court entered an order directing that Dr. Alawieh shall not be removed from the District of Massachusetts without providing the Court 48 hours' advance notice of the move and the reason therefore. ECF No. 4. After learning of the removal of Dr. Alawieh from the United States, on March 16, 2025, the Court entered an order directing the Respondents to respond to the Petitioner's allegation that they willfully disobeyed the Court's March 14 order. *See* ECF No. 12.

On March 17, 2025, Respondents filed their response to Petitioner's habeas petition and the allegation that they willfully disobeyed the Court's March 14 order. ECF No. 16. Respondents explained that CBP Officers at Logan Airport did not receive notice of the Court's order until after AirFrance 333 departed from the airport. *See* Wallace Decl., ECF No. 16-3, ¶¶ 14-17. After filing this response, on April 1, 2025, the Court granted Petitioner's unopposed motion to extend her March 31 deadline by five weeks to May 5, 2025, to either reply to the government's response or

to amend her habeas petition. On May 5, 2025, Petitioner filed an amended habeas petition and complaint, raising new constitutional claims as to her detention and removal while dropping her due process and INA claims. *See* Amended Habeas Petition, ECF No. 34. More specifically, Dr. Alawieh claims that her expedited removal order violates the Appointments and Suspension clauses of the United States Constitution and that the revocation of her H-1B visa violates the APA. *Id.* at 10-14. As for relief, Dr. Alawieh is seeking that the Court declare her expedited removal order void *ab initio*, declare the revocation of her H-1B visa in violation of the Administrative Procedure Act (APA), order the Respondents to place her into removal proceedings before an immigration judge under 8 U.S.C. § 1229(a), and order a pre-deprivation hearing. *See id.*, Prayer for Relief, ¶¶ A-C.

## II.    Regulatory and Statutory Framework For Aliens Seeking Admission into the United States.

It is well-established by the Supreme Court that Congress exercises "plenary power to make rules for the admission of foreign nationals and to exclude those who possess those characteristics which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972). Pursuant to that well-established doctrine, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). Accordingly, because aliens seeking admission have not been admitted to the United States, their constitutional rights are truncated: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). *Mezei*, 345 U.S. at 212; *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (reaffirming that an arriving alien "has only those rights regarding admission that Congress has provided by statute.").

Accordingly, the statutory and regulatory provisions of the expedited-removal system that

4

were enacted by Congress are at the heart of this case. Congress has delegated to the Secretary of Homeland Security the responsibility for "[s]ecuring the borders," enforcing the immigration laws, and "control[ling] and guard[ing] the boundaries and borders of the United States against the illegal entry of aliens." 6 U.S.C. §§ 202(2) & (3); 8 U.S.C. § 1103(a)(5). Aliens seeking admission to the United States at ports of entry are thus subject to inspection by a CBP officer and carry the burden of demonstrating their admissibility into the United States.[1] *See* 8 U.S.C. § 1225(a)(3); 8 C.F.R. § 235.1(f).

Relevant here is the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104208, Tit. III, § 302(a), 110 Stat. 3009-579. IIRIRA substantially amended the procedures under Section 1225(b) regarding aliens' admission and removal from the United States and established a new expedited removal process for adjudicating the claims of aliens arriving in the United States. The expedited removal process intended to "streamline rules and procedures . . . to make it easier to deny admission to inadmissible aliens," while ensuring that there is "no danger that an alien with a genuine asylum claim will be returned to persecution." H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1, at 157–58 (1996) (House Report). Under IIRIRA, an alien seeking entry into the United States at a port of entry is deemed an "applicant for admission." 8 U.S.C. § 1225(a)(1). Section 1225 defines "applicant for admission" broadly to include an alien "who arrives in the United States (whether or not at a designated port of arrival . . . .)." 8 U.S.C. § 1225(a)(1); *see also* 8 C.F.R. § 1001.1(q) (defining "arriving alien" to include "an applicant for admission coming or attempting to come into the United States at a port-of-entry"). Accordingly,

---

[1] The Attorney General once exercised the designation authority, but it has been transferred to the Secretary. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005). The relevant statutory references to the Attorney General are now understood to refer to the Secretary. *Id.*

after IIRIRA, with a limited exception not relevant here,[2] CBP officers inspect each arriving alien seeking admission at a port of entry in accordance with Section 1225 and determine if an inadmissibility ground under 8 U.S.C. § 1182 is applicable.

CBP officers at the port-of-entry have authority to permit or deny admission to the United States, including to those applicants in possession of a non-immigrant visa. 6 U.S.C. § 211(a) (establishment of U.S. Customs and Border Protection); 6 U.S.C. § 211(e) (creation of Border Patrol); 6 U.S.C. §251 (transfer of functions from former Immigration and Naturalization Service (INS) to DHS, including the Border Patrol Program); 8 U.S.C. § 1201(h) ("Nothing in this chapter shall be construed to entitle any alien, to whom a visa or other documentation has been issued, to be admitted the United States[.]"); 8 U.S.C. § 1225(a)(3) ("All aliens who are applicants for admission . . . shall be inspected by immigration officers."). Relevant here, "[t]he Secretary delegated limited authority to immigration officers to revoke visas only for specific reasons, and in an administrative way." *Gill v. Mayorkas*, 2021 WL 3367246, at *7 (W.D. Wash., 2021) (unpublished) (citing 22 C.F.R. § 41.122(e)).[3] Subsection (e)(2) provides "An immigration officer is authorized to revoke a valid visa by physically canceling it . . . if [. . .] [t]he alien is ordered . . . removed from the United States pursuant to [8 U.S.C. § 1225]."

Thus, issuance of a visa does not guarantee entry to the United States. A visa simply indicates that a U.S. consular officer at an American embassy or consulate has reviewed the application and that an officer has determined that the individual is eligible to enter the country for

---

[2] The exception concerns arriving aliens who obtained advance parole "prior to the alien's departure from and return to the United States," and are not treated as an arriving alien under § 1225(b)(1)(A)(i). 8 C.F.R. § 1001.1(q).

[3] The *Gill* court found 8 U.S.C. § 1252(a)(2)(A) did not bar jurisdiction to hear a challenge to CBP's revocation of Gill's nonimmigrant visa because CBP allowed Gill to withdraw his application for admission rather than face removal, pursuant to 22 C.F.R. § 41.122(e)(3), such that he was not subject to expedited removal. *Id.* at *4.

a specific purpose. *See* 8 U.S.C. § 1201(a)(1)(B). The CBP Officer at the port-of-entry will conduct an inspection to determine if the individual is otherwise eligible for admission under U.S. immigration law. 8 U.S.C. § 1201(h); 8 C.F.R. § 235.1(f)(1) ("Each alien seeking admission at a United States port-of-entry . . . must establish to the satisfaction of the inspecting officer that the alien is not subject to removal under the immigration laws . . . and is entitled . . . to enter the United States.").

If a CBP officer determines that an alien who is arriving in the United States is inadmissible under 8 U.S.C. § 1182(a)(6)(C) (misrepresentation in seeking admission), or 8 U.S.C. § 1182(a)(7) (lack of a valid entry document), and the alien does not indicate a fear of persecution, "the officer shall order the alien removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i); *see Thuraissigiam*, 591 U.S. at 140 ("Congress provided the right to a 'determination' whether he had 'a significant possibility' of 'establishing eligibility for asylum,' and he was given that right.") (cleaned up) (citing 8 U.S.C. §§ 1225(b)(1)(B)(ii), (v)); *see id*. ("[T]he Due Process Clause provides nothing more[.]").

Thus, the INA precludes all judicial review of expedited removal orders except where the INA expressly restores jurisdiction over particular types of claims. 8 U.S.C. §§ 1225(b)(1)(C), 1252(a)(2)(A)(iii), 1252(e)(2); 8 C.F.R. § 1003.42(f). Section 1252(a)(2)(A), titled "Matters not subject to judicial review," provides that for "[r]eview relating to section 1225(b)(1)"—including any order of expedited removal issued under section 1225(b)(1)—"*[n]otwithstanding any other provision of law* ... no court shall have jurisdiction to review ... *except as provided in subsection (e)* [*i.e.*, Section 1252(e)(2)]," "any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," or any "decision . . . to invoke the provisions of such section," or any "procedures and policies adopted . . . to implement the

provisions of section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(i), (ii), (iv) (emphasis added). Relief is further limited by 8 U.S.C. 1252(e)(1), which states: "Without regard to the nature of the action or claim . . . no court may enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in [Section 1252(e)(2)]."

Section 1252 thus removes from federal courts *any* jurisdiction to review issues "relating to section 1225(b)(1)," "in any action pertaining to" an expedited removal order, other than as explicitly permitted by Section 1252(e). Section 1252(e)(2), titled "Habeas Corpus Proceedings," restores jurisdiction over three specific types of habeas claims: challenges to the determinations made in expedited removal proceedings that "the petitioner is an alien," and that he has not "been admitted" as a lawful permanent resident, refugee, or granted asylum, *see* 8 U.S.C. § 1252(e)(2)(A), (C), and habeas challenges to "whether the petition was ordered removed under" section 1225(b)(1). *Id*. § 1252(e)(2)(B). Furthermore, "[i]n determining whether an alien has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner."[4] *Id*.

Accordingly, it is only the three limited issues set forth in Section 1252(e)(2) that can be raised in a habeas corpus proceeding involving expedited removal orders.

---

[4] Petitioner misstates the law in her amended petition, claiming Section "1252(e)(4)[] prescribe[es] a hearing under § 1229a as a remedy when a court determines a petitioner was not ordered removed *properly*." ECF No. 34 at ¶ 35 (emphasis added). But the statute does not carve out jurisdiction for expedited removal orders that are alleged to be "improperly" issued. It only permits a Section 1229a hearing "[i]n any case where the court determines that the petitioner [] is an alien who was not ordered removed under section 1225(b)(1) of this title." 8 U.S.C. § 1252(e)(4)(A); *see Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818-19 (9th Cir. 2004) (courts may not review whether alien "was improperly removed pursuant to § 1225(b)(1)(A)(I) in the first place").

## ARGUMENT

I. **The Court Lacks Jurisdiction Over Dr. Alawieh's Expedited Removal Order Claims and Requested Relief.**

When Dr. Alawieh arrived at Logan Airport on March 14, 2025, she was in possession of a valid H-1B employment visa. *See* Amended Habeas Petition, ¶¶ 1, 26. However, during her arrival inspection, CBP determined that Dr. Alawieh's true intentions in the United States could not be determined and thus canceled Dr. Alawieh's H-1B visa and deemed her inadmissible to the United States as an individual who was not in possession of a valid immigrant visa per 8 U.S.C. § 1182(a)(7)(A)(i). *See* ECF No. 16-2 at 6.

Once CBP made that determination, Dr. Alawieh was subject to expedited removal pursuant to 8 U.S.C. 1225(b)(1). Dr. Alawieh did not allege a fear of persecution upon return to Lebanon and does not do so here. *See* ECF No. 16 at 7; Ex. B at 6. Therefore, the INA precludes all further review of Dr. Alawieh's expedited removal order. In spite of this, the crux of Dr. Alawieh's Amended Habeas Petition seeks review of the invocation of the expedited removal statute against her on March 14, 2025. Specifically, she asks this court to declare her expedited removal order *void ab initio* because it was issued in violation of the Appointments and Suspension Clauses. Amended Habeas Petition, Prayer for Relief, ¶ A. However, this court lacks jurisdiction to grant such relief.

A. **Section 1252 Bars Review of this Action.**

Despite having spent time in the United States prior to her departure, Dr. Alawieh is an arriving alien that was ordered removed on an expedited basis when she attempted to enter the United States without a valid travel document. She is not an alien lawfully admitted for permanent residence, nor does she claim to be either a refugee or a beneficiary of a grant of asylum. Accordingly, the Court's review of any other aspect of the expedited removal order is foreclosed by Section 1252(e)(1). In short, because Dr. Alawieh's claims for violation of the Appointments

9

Clause, the Suspension Clause, and the APA do not fall within one of the three aforementioned limited circumstances allowing for judicial review of expedited removal proceedings, the Court lacks jurisdiction to review her claim.

The fact that Dr. Alawieh is alleging that CBP acted beyond the scope of its authority, in violation of the Appointments and Suspension Clauses, by applying the expedited removal statute to her, which includes the issuance of an expedited removal order, does not restore jurisdiction. *See Thuraissigiam*, 591 U.S. at 140-41 (reversing the Ninth Circuit's holding "that § 1252(e)(2) violates the Suspension Clause and the Due Process Clause"). Save for the three permitted bases for review under section 1252(e)(2) that are inapplicable here, no court has jurisdiction to review "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal," any "decision by the Attorney General to invoke the provisions of" the expedited removal statute, and "the application of such section to individual aliens, including the determination made under [INA] section 235(b)(1)(B)." 8 U.S.C. §§ 1252(a)(2)(A)(i)-(iii). The "relating to" language in section 1252(a)(2)(A)(i) "sweep[s] within its scope claims with [even] only a remote or attenuated connection to the [underlying] removal of an alien," *Aguilar v. ICE*, 510 F.3d 1, 10 (1st Cir. 2007), and so bars all claims—which plainly "relat[e] to the implementation or operation" of orders of expedited removal unless Section 1252(e) supplies jurisdiction. 8 U.S.C. § 1252(a)(2)(A)(i). Section 1252(a)(2)(A) also reaches any decision "to invoke the provisions of such section," which would encompass claims challenging how that "invocation" was implemented. *See* 8 U.S.C. § 1252(a)(2)(A)(ii).

Accordingly, many circuit courts hold that these provisions foreclose review of whether the expedited removal statute was properly invoked. *Vaupel v. Ortiz*, No. 06-1103, 2007 WL 2269444, *3 (10th Cir. Aug. 9, 2007) (holding that section 1252(e) "precludes review [] of whether the alien

10

is actually inadmissible or entitled to any relief from removal" and "does not appear to permit the court to inquire into whether section 1225(b)(1) was properly invoked, but only whether it was invoked at all"); *Turgerel v. Mukasey*, 513 F.3d 1202, 1205 (10th Cir. 2008) (holding that Section 1252(e) forecloses any "claim arising from the implementation or operation of the expedited removal order"); *United States v. Barajas-Alvarado*, 655 F.3d 1077, *20 (9th Cir. 2011) ("Congress expressly deprived courts of jurisdiction to hear" challenges to applications of the expedited removal statute and limited habeas review to "considering whether the petitioner is legally in the country, e.g., because the alien is a lawful permanent resident, admitted as a refugee, or has been granted asylum, and whether the petitioner was expeditiously removed"); *Khan v. Holder*, 608 F.3d 325, 330 (7th Cir. 2010) ("we lack jurisdiction to inquire whether the expedited removal procedure to which the [plaintiffs] were subjected was properly invoked"); *Avendano-Ramirez*, 365 F.3d at 818-19 (courts may not review whether alien "was improperly removed pursuant to § 1225(b)(1)(A)(I) in the first place"); *Meng Li v. Eddy*, 259 F.3d 1132, 1134, *opinion vacated as moot*, 324 F.3d 1109 (9th Cir. 2003) (courts may not "inquire into whether section 1225(b)(1) was properly invoked"); *Brumme v. INS*, 275 F.3d 442, 447-48 (5th Cir. 2001) (same). As such, "there [is no] exception in § 1252(e) providing authority to review constitutional claims related to the application of § 1225(b)(1)." *Vaupel*, 2007 WL 2269444 at *3. Therefore, the Court lacks jurisdiction to review the Appointments and Suspension Clause claims of Dr. Alawieh in relation to the application of the expedited removal statute to her.

Furthermore, the fact that Dr. Alawieh is raising a systemic challenge to the constitutionality of the expedited removal procedure, through the Appointments Clause claim, does not restore jurisdiction to this court. "[Section] 1252(e)(3) sets forth the process for bringing a constitutional challenge to § 1225(b) or its implementing regulations. Such a claim may be brought in the United

States District Court for the District of Columbia and must have been filed no later than 60 days after the date the challenged section or regulation was first implemented." *Id.* (citing 8 U.S.C. § 1252(e)(3)(A)-(B); *Am. Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38, 46-7, 60 (D.D.C. 1998) (dismissing as time-barred aliens' claims filed beyond the 60-day deadline; dismissing on the merits other aliens' timely due process challenge to expedited removal procedures)). Thus, the fact that Dr. Alawieh is raising a systemic challenge to the constitutionality of the expedited removal procedure does not change the outcome of jurisdiction, as such a claim may not be brought in this Court. *See id.* (citing *Li*, 259 F.3d at 1136 (holding under Section 1252(e)(3) that alien's challenge to expedited removal system could not be brought in courts in the Ninth Circuit)).

Likewise, Dr. Alawieh's APA claim will not change the jurisdictional outcome here. The APA is not a jurisdiction-conferring statute. *Califano v. Sanders*, 430 U.S. 99, 107 (1977). Rather, jurisdiction to hear APA claims is typically granted under the general federal-question statute, 28 U.S.C. § 1331. *Califano*, 430 at 107, n.7. But the APA itself explains that it does not apply "to the extent that . . . statutes preclude judicial review." 5 U.S.C. § 701(a)(1); *accord Webster v. Doe*, 486 U.S. 592, 599 (1988) ("Section 701(a) . . . limits application of the entire APA to situations in which judicial review is not precluded by statute."); *Arandi v. Morgan*, 2020 WL 1891949, at *1 (D. Mass. Apr. 16, 2020) (where court lacks jurisdiction to review expedited removal order, APA does not extend such jurisdiction). Dr. Alawieh's APA claim raises none of the permissible bases for review under 8 U.S.C. §§ 1252(a) and (e). Therefore, the Court should dismiss the case in its entirety.

**B.  Dr. Alawieh's claims fall outside the core of Habeas Corpus and thus she may not raise these claims in Habeas.**

A district court "may grant a writ of habeas corpus when the petitioner 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Sokhean Keo v. Warden of the Mesa Verde Ice Processing Center*, 2025 WL 1029392, at *3 (E.D. Cal. 2025) (quoting 28

U.S.C. § 2241(c)(3)); *see Thuraissigiam*, 591 U.S. at 119 (Habeas corpus "is at its core a remedy for unlawful executive detention.") (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("It is clear from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody."). And the traditional "remedy for such detention is, of course, release." *Munaf*, 553 U.S. at 693; *see also* 3 William Blackstone, Commentaries on the Laws of England 137 (1768) (explaining that the traditional habeas remedy is "removing the injury of unjust and illegal confinement") (emphasis omitted).

The Supreme Court, in *Department of Homeland Security v. Thuraissigiam*, reaffirmed this longstanding understanding of habeas corpus as a mechanism for seeking release from confinement. In *Thuraissigiam*, the Supreme Court noted that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody." 591 U.S. at 117. In doing so, the Supreme Court found that there is no habeas jurisdiction "to seek relief other than immediate or earlier release from confinement." *Id.* at 117. Accordingly, the Supreme Court held that claims for relief that fall "outside the 'core' of habeas may not be pursued through habeas." *Id.* (citing *Skinner v. Switzer*, 562 U.S. 521, 525 (2011); *see also Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)); *Preiser*, 411 U.S. at 487-89.

Here, Dr. Alawieh's challenge to the revocation of her visa under the APA and her challenges to her removal under the Appointments and Suspension Clauses of the United States Constitution do not fall within the "core" of habeas corpus. In fact, Dr. Alawieh has been released from CBP custody and removed from the United States to Lebanon in accordance with the expedited removal order that was issued. Response to Habeas Petition, Ex. A; *see generally* Amended Habeas Petition (making no claims for release). Accordingly, for this reason alone, the

Court should dismiss Dr. Alawieh's entire habeas petition. *See Thuraissigiam*, 591 U.S. at 117, 120-21, 126-27; *see also Gicharu v. Moniz,* No. CV 23-11672-MJJ, 2023 WL 5833115, at *1 (D. Mass. Sept. 8, 2023), *aff'd,* No. 23-1818, 2024 WL 4493395 (1st Cir. May 8, 2024), *cert. denied*, No. 24-445, 2024 WL 5112311 (U.S. Dec. 16, 2024), *reh'g denied*, No. 24-445, 2025 WL 299595 (U.S. Jan. 27, 2025) (dismissing habeas and collecting cases finding that removal from the United States "moots [the] petition for release from ICE custody because the Court can no longer provide the requested relief."). *Omondiagbe v. McDonald*, No. CIV.A. 13-11182-MBB, 2014 WL 1413560, at *1 (D. Mass. Apr. 10, 2014) ("Because the petition seeks only immediate release from the unlawful detention as well as to prevent respondent from transferring petitioner to a detention facility outside the jurisdiction of the court . . . his release and removal from the United States renders the petition moot.") (internal quotes omitted).

At the core of her Appointments Clause, Suspension Clause, and APA claims, Dr. Alawieh is seeking additional procedures that could result in a decision allowing Dr. Alawieh to lawfully enter or be admitted to the United States and provide her with protections from removal. *See* Amended Habeas Petition, Prayer for Relief, ¶¶ A, C. That requested relief, however, has no parallel in the core of habeas corpus, under which a habeas petitioner challenged his or her ongoing detention and sought release from custody. *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 450 (3d Cir. 2016) (Hardiman, J., concurring dubitante) (rejecting similar challenge because aliens sought not to be released, but rather "to alter their status in the United States in the hope of avoiding release to their homelands"); *see also Hamama v. Adducci*, 912 F.3d 869, 875-876 (6th Cir. 2018) (determining that habeas petitioners seeking stay of removal were "not seeking relief that fits in the 'core remedy' of habeas"). In fact, in *Thuraissigiam*, the Supreme Court held that an arriving alien's requested relief, which sought to vacate his expedited removal order and to

14

provide him with additional proceedings concerning relief or protection from removal, "might fit an injunction or writ of mandamus . . ., but that relief falls outside the scope of the common-law habeas writ." *See* 591 U.S. at 117-18. Accordingly, because Dr. Alawieh's amended habeas petition falls outside the core of habeas corpus, the court lacks jurisdiction over the Appointments Clause, Suspension Clause, and the APA claims, and thus must dismiss this action.[5]

## II.    Even Assuming the Court Can Reach the Merits, Dr. Alawieh's Expedited Removal Order was not issued in violation of the Appointments Clause and thus her claims must be dismissed.

In the memorandum of law supporting the Amended Habeas Petition, Dr. Alawieh asserts that CBP officers are not authorized to issue removal orders because they are not appointed through the process required by the Appointments Clause of the United States' Constitution. *See* ECF No. 46 at 11-22. Accordingly, Dr. Alawieh is raising a systemic challenge to the constitutionality of the expedited removal procedure. For the reasons discussed above, this Court lacks jurisdiction over this claim. *See* Part I. Therefore, for this reason alone, the claim must be dismissed. However, even if the Court finds that it has jurisdiction over this action, it should still dismiss the petition, because CBP officers are not subject to the Appointments Clause.

---

[5] Should the Court find that it has jurisdiction outside of habeas over Petitioner's civil claims, it should still dismiss them without prejudice as improperly raised in habeas and require Petitioner to file a civil claim subject to the Federal Rules of Civil Procedure. *See Mayle v. Felix*, 545 U.S. 644, 655 (2005); *McLaughlin v. MacDonald*, 2012 WL 4058063, at *5 (D.Mass., Aug. 22, 2012) (recommending the court dismiss habeas petitioner's claims that "do not concern the fact, duration or degree of his confinement [. . .] without prejudice to [petitioner] raising his non-habeas claims in a civil rights suit."), *report and recommendation adopted*, 2012 WL 4058060 (D.Mass., Sept. 12, 2012); *Carpenito v. Wrenn*, 2009 WL 1798149, at *1 (D.N.H. 2009) (where petitioner raised both habeas and civil rights claims in his petition, court "treat[ed] the existing case as a petition for a writ of habeas corpus, and open[ed] this action based on the civil rights claims in the habeas petition"); *Trollope v. Vaughn*, 2018 WL 3913922, at *3 (C.D. Cal. Aug. 13, 2018) (declining to convert a non-cognizable habeas petition to a civil rights claim in part because petitioner paid only the $5 habeas fee and not the $350 civil filing fee and $50 administrative fee) (citing 28 U.S.C. § 1914); *Jorgenson v. Spearman*, 2016 WL 2996942, at *1 (C.D. Cal. May 22, 2016) (same).

The Appointments Clause of the U.S. Constitution "prescribes the exclusive means of appointing 'Officers.'" *Lucia v.    Sec. & Exch. Comm'n*, 585 U.S. 237, 244 (2018). The Appointments Clause categorizes officers into two types: (1) "Officers" who must be nominated by the President and confirmed by the Senate; and (2) "inferior Officers" who must be appointed by the President, Courts of Law, or Heads of Departments. U.S. CONST. art. II, § 2, cl. 2. Accordingly, "[n]on-officer employees," who are "part of the broad swath of 'lesser functionaries' in the Government's workforce," do not implicate the Appointments Clause. *Lucia*, 585 U.S. at 245. The Supreme Court, in distinguishing between "officers" and "non-officer employees," has held that to be an "Officer of the United States" covered by the Appointments Clause, a person must "exercis[e] significant authority pursuant to the laws of the United States." *Buckley v. Valeo*, 424 U.S. 1, 125–126 (1976).

The Supreme Court laid out the following factors to determine whether agency staff are "inferior Officers" who must be appointed: (1) whether their jobs are "continuing and permanent," and not "occasional or temporary"; (2) whether they take testimony, by, for example, receiving evidence and examining witnesses; (3) whether they conduct trials, rule on motions, administer oaths, and generally regulating the course of a hearing; (4) whether they rule on the admissibility of evidence "thus critically shap[ing] the administrative record"; and (5) whether they "have the power to enforce compliance with discovery orders," like by "punish[ing] all contemptuous conduct." *Lucia*, 585 U.S. at 247-49.

Weighing these factors, the United States District Court for the District of Arizona held that CBP officers who issue expedited removal orders are not inferior officers that exercise significant authority in accordance with the Appointments Clause. *United States v. Millanes-Corrales*, 2024

16

WL 2892446, *17 (D. Ariz. Jan. 23, 2024), *report and recommendation adopted*, 2024 WL 2503030 (D. Ariz. May 24, 2024) (unpublished). This Court should find the same.

Similar to the arriving alien in *Millanes-Corrales*, Dr. Alawieh relies on *Lucia v. S.E.C*, in asserting that CBP officers, by issuing expedited removal orders, are officers that exercise significant authority in accordance with the Appointments Clause. *See* ECF No. 46 at 19-21, 24-25. In *Lucia*, the Supreme Court held that Security and Exchange Commission administrative law judges ("SEC ALJs") are "officers" under the Appointments Clause. *Lucia*, 585 U.S. at 247. The Supreme Court concluded that the SEC ALJs had "nearly all the tools of federal trial judges." *Id.* at 248. In doing so, the Supreme Court specifically noted that SEC ALJs have the authority to take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders. *Id*. at 248.

The authority and discretion of CBP officers who inspect arriving aliens and issue expedited removal orders, however, is not remotely akin to that of a SEC ALJ. CBP officers "[do] not take testimony, conduct trials, rule on the admissibility of evidence, or shape the administrative record by issuing subpoenas, enforcing discovery orders, or making contempt findings; they also do not administer oaths, rule on motions, or regulate hearings or the conduct of the parties or counsel. *Millanes-Corrales*, 2024 WL 2892446, at *16. Rather, the court found that CBP officers "simply interviews the noncitizen. If the noncitizen is inadmissible under one of the statutory grounds for expedited removal, then the [officer] 'shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intent to apply for asylum . . . or a fear of persecution.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(2)(i)). Therefore, CBP officers do not exercise significant discretion-in fact the officer's "discretion is highly constrained" and "subject to consultation requirements, to guidelines, and to supervision[.]" *Id.* at

16 (citing *Tucker v. Comm'r*, 676 F.3d 1129, 1134–35 (D.C. Cir. 2012) (appeal officers within the IRS perform ministerial duties and do not have significant authority or discretion)) (internal quotes omitted). Accordingly, given that CBP officers conducting expedited removal proceedings do not have the tools of federal judges, the *Millanes-Corrales* court held that the *Lucia* case undercuts the argument that CBP officers are officers that exercise significant authority subject to the Appointments Clause. *Id*.

Similarly, like the arriving alien in *Millanes-Corrales*, Dr. Alawieh also relies on *Dueñas v. Garland*, 78 F.4th 1069, 1072 (9th Cir. 2023) in asserting that CBP officers exercise greater authority than immigration judges through the expedited removal procedure and are thus officers for purposes of the Appointments Clause. *See* ECF No. 46 at 21-22.  In *Dueñas*, the Ninth Circuit held that Immigration Judges are "officers" who are subject to the Appointments Clause because their "responsibilities are legally defined and continuous" and "they wield substantial authority in "conducting adversarial hearings in removal proceedings." *Dueñas*, 78 F.4th at 1073. CBP officers, however, do not conduct adversarial proceedings and their discretion is more limited than immigration judges in relation to the expedited removal process. *See Millanes-Corrales*, 2024 WL 2892446, at \*17. Rather, "when a noncitizen raises a claim of asylum or fear of persecution, the expedited removal proceeding does not go forward, and instead, the [arriving alien's] case is referred to an immigration officer within CBP (*e.g.*, an Immigration Judge or asylum officer) so that person can conduct a proceeding that is more akin to a trial or evidentiary hearing. *Id*. ("This referral process further demonstrates the limited authority and discretion afforded to a CBP officer conducting an expedited removal proceeding.")  Accordingly, the *Millanes-Corrales* court held that the *Dueñas* case undercuts the argument that CBP officers are officers that exercise significant authority subject to the Appointments Clause. *Id*.

Based on the foregoing reasons, which address the factors that are considered in determining whether agency staff are "inferior officers" who must be appointed, the *Millanes-Corrales* court held that a CBP officer who conducts an expedited removal proceeding and issues an expedited removal order is not an officer for purposes of the Appointments Clause. For the same reasons, this Court should follow suit and find that the CBP officers who issued Dr. Alawieh's expedited removal order are not inferior officers for purposes of the Appointments Clause and the removal order is not *void ab initio*.

Furthermore, Dr. Alawieh's assertion that the CBP officers are officers for purposes of the Appointments Clause because they exercised adjudicative authority by issuing Dr. Alawieh's expedited removal order is unavailing. In support of this assertion, Dr. Alawieh cites to *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 219 (2020), *Freytag v. Commissioner*, 501 U.S. 868, 880–82 (1991), *Morrison v. Olson*, 487 U.S. 654, 671–72 (1988), and *Nishimura Ekiu v. United States*, 142 U.S. 651, 662–63 (1892). These cases, however, undermine Dr. Alawieh's argument because the inferior officers either had the authority to conduct adversarial proceedings, or the authority to take testimony. *See Seila Law LLC*, 591 U.S. at 219; *Freytag*, 501 U.S. at 881–82; *Morrison*, 487 U.S. at 671–72; *Nishimura Ekiu*, 142 U.S. at 662–63. CBP officers do neither, and if a hearing is required due to an alien asserting a credible fear of persecution, the CBP officer merely refers the alien to immigration proceedings. 8 U.S.C. § 1225(b)(1)(B)(ii).

Accordingly, a CBP officer who conducts an expedited removal proceeding and issues an expedited removal order is not an officer for purposes of the Appointments Clause. As such, Dr. Alawieh's expedited removal order was not issued in violation of the Appointments Clause and thus it is not void *ab initio*. Finding otherwise would undermine Congress' intent in establishing an expedited removal process. Dr. Alawieh also asserts that because her expedited removal order was

void *ab initio*, the CBP officers lacked authority to revoke her H-1B visa under 22 C.F.R. § 41.122(e)(2) and thus the visa revocation violates the APA. For the reasons discussed above, however, Dr. Alawieh's expedited removal order was not issued in violation of the Appointments Clause. Therefore, this APA claim must also fail.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Dr. Alawieh's Amended Habeas Petition.

DATED: June 23, 2025                        Respectfully Submitted,

                                            BRETT A. SHUMATE
                                            *Assistant Attorney General*
                                            Civil Division

                                            WILLIAM C. PEACHEY
                                            *Director*, Office of Immigration Litigation

                                            YAMILETH G. DAVILA
                                            *Assistant Director*

                                            JAMES J. WALKER
                                            *Senior Litigation Counsel*

                                            By: */s/ Kelark Azer Habashi*
                                            Kelark Azer Habashi (D.C. Bar 90009126)
                                            *Trial Attorney*
                                            U.S. Department of Justice, Civil Division
                                            Office of Immigration Litigation
                                            District Court National Security Section
                                            P.O. Box 868, Washington D.C. 20044
                                            T: (202)-305-3340
                                            kelark.azer.habashi2@usdoj.gov
                                            *Counsel for Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2025, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Massachusetts by using the CM/ECF system, which will send notice of such filing to all parties that have appeared in this case. Counsel in the case are registered CM/ECF users and thus service will be accomplished by the CM/ECF system.

*/s/ Kelark Azer Habashi*
Kelark Azer Habashi (D.C. Bar 90009126)
*Trial Attorney*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation