# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

RASHA ALAWIEH,

*Petitioner-Plaintiff*,

v.

[FIRST NAME UNKNOWN] TWEEDIE, Officer of U.S.
Customs and Border Protection at the Boston Logan
International Airport; [FIRST NAME UNKNOWN]
KANE, Officer of U.S. Customs and Border Protection at
the Boston Logan International Airport; CAROLINE R.
TULLY, Officer of U.S. Customs and Border Protection at
the Boston Logan International Airport; JOHN/JANE
DOE, Acting Field Office Director of the Boston Field
Office of U.S. Customs and Border Protection; PETER R.
FLORES, Acting Commissioner, U.S. Customs and Border
Protection; KRISTI NOEM, Secretary of the United States
Department of Homeland Security; PAMELA BONDI,
Attorney General, U.S. Department of Justice,

*Respondents-Defendants,
all named in their official
capacities.*

**Case No. 1:25-cv-10614 (LTS)**

## PETITIONER'S REPLY MEMORANDUM OF LAW IN SUPPORT OF FIRST AMENDED HABEAS PETITION AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*(Leave to file granted July 2, 2025, ECF No. 52)*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION…………………………………………………………………………1

ARGUMENT…………………………………………………………………………......2

    A.  BECAUSE CBP OFFICERS WHO INSPECT PEOPLE AT PORTS OF
        ENTRY ARE "OFFICERS" UNDER THE APPOINTMENTS CLAUSE,
        THE EXPEDITED REMOVAL ORDER ISSUED AGAINST DR. ALAWIEH
        BY UNAPPOINTED CPB OFFICERS IS VOID *AB INITIO*…………………………2

          1.  Respondents Do Not Contest that CBP Officers' Positions Are Continuing,
              Permanent, and Entail Important Functions………………………………………3

          2.  Respondents' Assertion that Only Those Who Preside Over Adversarial
              Hearings Wielding Tools of a Federal Judge Can Be Considered "Officers"
              Is Novel and Wrong………………………………………………………………3

          3.  The Immigration and Nationality Act, Federal Regulations, and Internal
              CBP Policies Show CBP Officers Exercise "Significant Authority" with
              Considerable Discretion……………………………………………………………6

    B.  THIS COURT HAS JURISDICTION OVER DR. ALAWIEH'S
        CLAIMS……………………………………………………………………….....9

          1.  This Court Has Statutory Jurisdiction over Dr. Alawieh's Appointments
              Clause Claim Under 8 U.S.C. §§1252(e)(2)(B) and (e)(5) Because the
              Purported Expedited Removal Order Is Void *Ab Initio*………………………..9

              a.  Respondents' Failure to Respond to Dr. Alawieh's Argument
                   Concerning the Court's Statutory Jurisdiction Over Her
                   Appointments Clause Claim Constitutes Waiver………………………9

               b.  Respondents' Jurisdictional Arguments Otherwise Mischaracterize
                   Dr. Alawieh's Appointments Clause Claim and Fail…………………10

          2.  Under the Suspension Clause, this Court Has Jurisdiction Over Both
               the Appointments Clause and Due Process Claims that Dr. Alawieh
              Has Asserted………………………………………………………………......11

              a.  Respondents' Overbroad Reading of *Thuraissigiam* Does Not
                 Strip This Court of Jurisdiction………………………………………..14

CONCLUSION………………………………………………………………………..15

# TABLE OF AUTHORITIES

**Cases**

*Banks v. Gonzales*,
  496 F. Supp. 2d 146 (D.D.C. 2007) ........................................................................ 14

*Brumme v. INS*,
  275 F.3d 443 (5th Cir. 2001) .................................................................................. 13

*Carafas v. LaValle*,
  391 U.S. 234 (1968) .......................................................................................... 14, 15

*Chae Chan Ping v. U.S.*,
  130 U.S. 581 (1889) ................................................................................................ 11

*D.A.M. v. Barr*,
  486 F. Supp. 3d 404 (D.D.C.2020) ....................................................................... 9, 10

*Dep't of Homeland Sec'y v. Thuraissigiam*, 591 U.S. 103 (2020) ........................................ 13, 14

*Dickerson v. Guste*,
  932 F.2d 1142 (5th Cir. 1991) ............................................................................... 14

*Dueñas v. Garland*,
  78 F.4th 1069 (9th Cir. 2023) .................................................................................. 4

*Dugdale v. Lynch*,
  672 F. App'x 35 (D.C. Cir. 2016) ............................................................................. 9

*Dugdale v. U.S. Customs & Border Prot.*,
  88 F. Supp. 3d 1 (D.D.C. 2015) ............................................................................... 9

*Fernos-Lopez v. Figarella Lopez*,
  929 F.2d 20 (1st Cir. 1991) ..................................................................................... 14

*Freytag v. Commissioner*,
  501 U.S. 868 (1991) ............................................................................................ 4, 8

*GGNSC Administrative Services, LLC v. Schrader*,
  958 F.3d 93 (1st Cir. 2020) ..................................................................................... 10

*Hensley v. Municipal Ct.*,
  411 U.S. 345 (1973) ................................................................................................ 14

*INS v. Chadha,*
    462 U.S. 919 (1983) ........................................................................................... 11

*Jones v. Cunningham,*
    371 U.S. 236 (1963) ........................................................................................... 14

*Kansas City S. Ry. Co. v. Great Lakes Carbon Corp.,*
    624 F.2d 822, 825 (8th Cir. 1980) ..................................................................... 10

*Khan v. Holder,* 608 F.3d 325 (7th Cir. 2010) .......................................................... 12

*Kwong Hai Chew v. Colding,*
    344. U.S. 590 (1953) ......................................................................................... 12

*Landon v. Plasencia,*
    459 U.S. 21 (1982) ............................................................................................ 12

*Lucia v. S.E.C.,*
    585 U.S. 237 (2018) ................................................................................... passim

*Meng Li v. Eddy,*
    259 F.3d 1132 (9th Cir. 2001) ........................................................................... 13

*Moore v. Industrial Demolition LLC,*
    138 F.4th 17 (1st Cir. May 13, 2025) ................................................................ 10

*Nowakowski v. New York,*
    835 F.3d 210  (2d Cir. 2016) .............................................................................. 14

*Picrin-Peron v. Rison,*
    930 F.2d 773 (9th Cir. 1991) ............................................................................. 14

*Qassim v. Bush,*
    466 F.3d 1073 (D.C. Cir. 2006) ........................................................................ 14

*Rivera-Gomez v. de Castro,*
    843 F.2d 631 (1st Cir.1988) .............................................................................. 10

*Shaughnessy v. U.S. ex rel. Mezei,*
    345 U.S. 206 (1953) .......................................................................................... 12

*Steinberg v. Police Court,*
    610 F.2d 449 (6th Cir. 1979) ............................................................................. 15

*United States v. Barajas-Alvarado,*
  655 F.3d 1077 (9th Cir. 2011).................................................................... 12

*United States v. Millanes-Corrales,*
  2024 WL 2892446 (D. Ariz. Jan. 23, 2024)............................................ 3, 8

*United States v. Zanino,*
  895 F.2d 1 (1st Cir. 1990) ........................................................................ 10

*Vaupel v. Ortiz,*
  244 Fed. Appx. 892 (10th Cir. 2007) ........................................................ 13

*Williams v. North Carolina,*
  325 U.S. 226 (1945) .................................................................................. 10

*Zadvydas v. Davis,*
  533 U.S. 678 (2001) .................................................................................. 11

## Constitutional Provisions

Art. II, Sec. 2, Cl. 2……………………………………………………………*passim*

Art I, Sec. 9, Cl. 2……………………………………………………………..*passim*

## Statutes

6 U.S.C. § 202(2) ......................................................................................... 3

6 U.S.C. § 202(3) ......................................................................................... 3

8 U.S.C. § 1103 (a)(5).................................................................................. 3

8 U.S.C. § 1225(a)(3)................................................................................... 3

8 U.S.C. § 1225(b)(1) ............................................................................ 12, 13

8 U.S.C. § 1225(d)(4)(A)............................................................................. 6

8 U.S.C. § 1229a .......................................................................................... 7

8 U.S.C. § 1252(e)(2)............................................................................. 12, 13

8 U.S.C. § 1252(e)(2)(B) ................................................................ 1, 9, 10, 12

8 U.S.C. § 1252(e)(5) ............................................................................................ 1, 9, 10, 12

28 U.S.C. § 2241 ............................................................................................................ 14

**Regulations**

8 C.F.R. § 235.1(f) ............................................................................................................ 3

8 C.F.R. § 235.3(b)(2) ...................................................................................................... 5

8 C.F.R. § 235.3(b)(2)(i) ............................................................................................. 5, 6

8 C.F.R. § 235.3(b)(2)(ii) ................................................................................................. 7

8 C.F.R. § 235.3(b)(2)(iii) ................................................................................................ 6

8 C.F.R. § 235.3(b)(3) ...................................................................................................... 7

8 C.F.R. § 235.3(b)(6) ...................................................................................................... 7

8 C.F.R. § 235.3(b)(7) ...................................................................................................... 7

**Other Authorities**

2006 CBP Inspector's Field Manual ............................................................... 4, 5, 7, 9

## INTRODUCTION

After living in the United States for seven years, training and working tirelessly as a physician caring for vulnerable patients here, Petitioner-Plaintiff, Rasha Alawieh ("Dr. Alawieh" or "Petitioner")—a visibly Muslim woman—was denied re-entry into the U.S. after a brief vacation abroad. Officers of U.S. Customs and Border Protection ("CBP") summarily cancelled her H-1B work visa and issued an expedited removal order against her, which bars her re-entry into the U.S. for a five-year period. Because those *unappointed* officers qualify as "Officers" under the Appointments Clause of the U.S. Constitution, their expedited removal order against Dr. Alawieh is void *ab initio*. Pet'r's Mem. of Law in Supp. of First Am. Habeas Pet. and Compl. for Declaratory and Injunctive Relief at 2–18, ECF No. 46 ("Pet'r's Mem."). Additionally, the application of expedited removal to Dr. Alawieh violated her due-process rights—accrued in the course of seven years of living and working in the U.S.—to have the question of her admissibility into the U.S. reached within standard removal proceedings occurring within the interior. *Id.* at 19–25.

In opposing Dr. Alawieh's claims, Respondents-Defendants ("Respondents") have set up a field of straw men that fails to address both her actual arguments and relevant legal authorities. Resp'ts' Opp. to Pet'r's' Am. Habeas Corpus Pet. and Compl. and Supp. Mem. of Law, ECF No. 50 ("Resp'ts' Opp."). Respondents argue, counter to Supreme Court precedent, that officials are "officers" within the meaning of the Appointments Clause only if their work occurs within adversarial proceedings providing them all or most of the tools that federal judges possess. Not so. Notably, Respondents have *not* contested the statutory jurisdiction the Court has under 8 U.S.C. §§1252(e)(2)(B) and (e)(5) to reach Dr. Alawieh's Appointments Clause claim. Instead, they wrongly argue against the Court's constitutional jurisdiction to reach it, under the Suspension

Clause—eliding both the fact of her custody at the time her next-friend initiated this lawsuit, that custody's ongoing collateral consequences, and the fact of her substantial ties to the United States, accrued over seven years of living and working here. Last but not least, Respondents flatly argue that a non-citizen in Dr. Alawieh's position has no due-process rights at all.

Dr. Alawieh respectfully urges the Court to reject Respondents' arguments, assume jurisdiction over her claims, grant them on their merits, and order the relief she is seeking—which would give her the chance to resume providing life-saving and life-changing care to deeply vulnerable patients, as one of only three transplant nephrologists in the state of Rhode Island.

## ARGUMENT

### A. BECAUSE CBP OFFICERS WHO INSPECT PEOPLE AT PORTS OF ENTRY ARE "OFFICERS" UNDER THE APPOINTMENTS CLAUSE, THE EXPEDITED REMOVAL ORDER ISSUED AGAINST DR. ALAWIEH BY UNAPPOINTED CPB OFFICERS IS VOID *AB INITIO*.

CBP officers who inspect people at ports of entry are "Officers" subject to the Appointments Clause, because (1) they are continuously and permanently employed in a position established by law and (2) they carry out an important function of the federal government in which they exercise significant authority. Respondents do not contest that if the expedited removal order was issued in violation of the Appointments Clause, it would properly be treated as void *ab initio* for the reasons Dr. Alawieh has provided the Court. *Compare* Resp'ts' Op. at 17, 23, *with* Pet'r's Mem. at 2–18.[1]

---

[1] The U.S. Supreme Court recently decided a case concerning claims under the Appointments Clause. *Kennedy v. Braidwood Management Inc.*, 606 U.S. ___ (June 27, 2025). Dr. Alawieh anticipates providing this Court with a related, forthcoming Notice of Supplemental Authority.

**1. Respondents Do Not Contest that CBP Officers' Positions Are Continuing, Permanent, and Entail Important Functions.**

Respondents do not contest that CBP officers' positions are "continuing and permanent" rather than "occasional or temporary." *See Lucia v. Securities & Exchange Comm'n*, 585 U.S. 237, 245 (2018). Nor do Respondents dispute that CBP officers carry out important functions of the federal government by screening non-citizens for admission to the United States. Indeed, Respondents define the function of a CBP officer's application of the expedited removal statute to be "securing the borders, enforcing the immigration laws, and controlling and guarding the boundaries and borders of the United States against the illegal entry of [non-citizens]." Resp'ts' Opp. at 5 (citing 6 U.S.C. §§ 202(2) & (3); 8 U.S.C. § 1103(a)(5)). And Respondents acknowledge that the task of "inspecting" arriving non-citizens falls on individual CBP officers, who determine whether the non-citizen can "carry the burden of demonstrating their admissibility into the United States." Resp'ts' Opp. at 5 (citing 8 U.S.C. § 1225(a)(3); 8 C.F.R. § 235.1(f)).

**2. Respondents' Assertion that Only Those Who Preside Over Adversarial Hearings Wielding Tools of a Federal Judge Can Be Considered "Officers" Is Novel and Wrong.**

Respondents erroneously argue an officer can only be considered an "Officer" under the Appointments Clause if they oversee an adversarial hearing wielding the tools of a federal judge. Resp'ts' Opp. at 15–20. The only support they can muster for this position comes from five paragraphs of an unpublished decision by an out-of-district magistrate judge. *Id*. at 16–19 (citing *United States v. Millanes-Corrales*, 2024 WL 2892446, *17 (D. Ariz. Jan. 23, 2024), *report and recommendation adopted*, 2024 WL 2503030 (D. Ariz. May 24, 2024)). In *Millanes-Corrales*, the magistrate held that a CBP officer is not an "Officer" because "[t]he agent does not take testimony, conduct trials, rule on the admissibility of evidence, or shape the administrative record by issuing subpoenas, enforcing discovery orders, or making contempt findings; they also do not administer

oaths, rule on motions, or regulate hearings or the conduct of the parties or counsel. The processing agent simply interviews the noncitizen." *Id*. Relying on this language, Respondents state that CBP officers cannot be "Officers" for Appointments Clause purposes, because they "do not have the tools of federal judges" when "conducting expedited removal proceedings" and "do not conduct adversarial proceedings…" Resp'ts' Opp. at 18.

Supreme Court cases addressing the Appointments Clause have never held that an official must have the powers of a federal judge or must oversee an adversarial hearing in order to be considered an "Officer" subject to the Appointments Clause. It is telling that Respondents cannot cite a single published case that supports their proposed new rule.

In contrast, the Supreme Court analyzes whether the official occupies a position of "significant authority" and whether they carry out "important functions" of the federal government. *Lucia*, 585 U.S. at 246; *see also Freytag v. Commissioner*, 501 U.S. 868, 878 (1991). *Lucia* and *Freytag*—as well as *Dueñas v. Garland*, 78 F.4th 1069 (9th Cir. 2023), holding that immigration judges are "Officers"—addressed these questions in the context of processes that were made adversarial by statute and regulation. As a result, those decisions reasonably pointed to the power to subpoena, take testimony, issue contempt orders to counsel, and oversee the discovery process, as proof that administrative judges exercised significant authority and carried out important functions of the federal government. The fact the expedited removal "process" provides individuals like Dr. Alawieh with hardly any safeguards at all does not *weaken* the argument that CBP officers exercise "significant authority": it strengthens it. As the CBP's 2006 Inspectors Field Manual makes clear, "The expedited removal proceedings give officers a great deal of authority over removal of [non-citizens] and will remain subject to serious scrutiny by the public, advocate

groups, and Congress." *See* 2006 CBP Inspector's Field Manual, Chapter 17.15 at 300, https://www.governmentattic.org/5docs/CPB-IFM_2006.pdf.

In the inspection context, CBP officers *do* take testimony, administer oaths, and shape the administrative record in interviewing applicants for admission. *See, e.g*., 8 C.F.R. § 235.3(b)(2) (detailing authorities and procedures attendant to inadmissibility determinations that CBP officers make); *id*. at § 235.3(b)(2)(i) (describing development of "Record of Proceeding," including "sworn statement" from the non-citizen, that CBP officers obtain). Here, CBP officers administered an oath to Dr. Alawieh and shaped the entire administrative record by taking her testimony about her travels abroad, her relationships with family and friends, her religious and political beliefs, and the contents of her phone. Resp'ts' Resp. to Habeas Pet. and Court Order, Ex. B (Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act), ECF No. 16-2 at 1 ("Sworn Stmt."). The officers warned her they could criminally prosecute her if she made a misstatement. *Id*. They presented themselves as having final authority over the question of her admission and entry into the country, explaining, "This may be your only opportunity to present information to me and the Department of Homeland Security to make a decision." *Id*. The officers then made decisions as to what statements to include in the record and what statements to exclude, determining what her "true intentions" were. Resp'ts' Opp. at 9. They made *de facto* rulings on the admission of evidence by looking at the content of her phone, soliciting statements from her about photographs, and then ruling that they were denying her admission based on those statements and that evidence. *Id.* at 2–3. The fact that this "process" was non-adversarial—i.e. that Dr. Alawieh was allowed no legal representation and has no way to appeal or challenge the decision at the agency level—demonstrates that the powers of the officers are in some respects even *broader*

than those of some federal judges, who at least are subject to appeal and bound by the Federal

Rules of Evidence and a litany of procedural and ethical obligations.

### 3. The Immigration and Nationality Act, Federal Regulations, and Internal CBP Policies Show CBP Officers Exercise "Significant Authority" with Considerable Discretion.

The Immigration and Nationality Act ("INA"), federal regulations, and CBP's own internal

guidelines make clear CBP officers exercise significant authority and discretionary power,

satisfying the *Lucia* test. For instance, 8 U.S.C. § 1225(d)(4)(A) gives CBP officers "subpoena

authority:"

> The Attorney General and any immigration officer shall have power to require by subpoena the attendance and testimony of witnesses before immigration officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service…

*Id*. Federal regulations provide CBP officers with the authority to maintain an arriving non-

citizen's detention until they make the decision permitting the non-citizen to land. 8 C.F.R. §

253.3(a). CBP has discretion "to apply the provisions of section 235(b)(1) [8 U.S.C. § 1225(b)(1)]

of the Act, at any time, to any class of [non-citizens] described in this section." 8 C.F.R. §

235.3(b)(ii).

CBP officers must keep a detailed "record of proceeding," 8 C.F.R. § 235(b)(2)(i), and

have authority to "create a record of the facts of the case and statements made by the [non-citizen]."

*Id*. The officer has authority to ensure that the statements are made under oath. *Id*. The CBP officer

advises the non-citizen of the charges against them and gives them an opportunity to respond to

those charges, again, in a sworn statement given under oath. *Id*. The CBP officer's decision is final.

As a result of the CBP officer's inadmissibility determination and expedited removal order, the

non-citizen "shall be detained pending determination and removal." 8 C.F.R. § 235.3(b)(2)(iii).

CBP officers also have the discretionary authority to charge arriving non-citizens with inadmissibility grounds beyond those that trigger expedited removal and to place the non-citizen into removal proceedings before an immigration judge, pursuant to 8 U.S.C. § 1229a. *See* 8 C.F.R. § 235.3(b)(3). CBP officers also hear and take testimony as to whether a non-citizen was previously admitted or paroled into the United States. 8 C.F.R. § 235.3(b)(6). Federal regulations make clear that this process requires taking additional evidence:

> The [non-citizen] will be allowed to present evidence or provide sufficient information to support the claim. Such evidence may consist of documentation in the possession of the alien, the Service, or a third party. The examining immigration officer will consider all such evidence and information, make further inquiry if necessary, and will attempt to verify the alien's status through a check of all available Service data systems.

*Id*. After concurrence from a supervising CBP officer, the non-citizen is not entitled to legal representation during this interview, is not entitled to a hearing, and may not appeal. 8 C.F.R. § 235.3(b)(2)(ii). The supervisory review is limited to a "review of the sworn statement." 8 C.F.R. § 235.3(b)(7).

CBP officers also have discretion to allow applicants for admission to withdraw their applications and avoid an inadmissibility determination altogether. *See* 2006 CBP Inspector's Field Manual, Chapter 17.2 at 242. Officers have discretion to allow withdrawal, even when the individual may be inadmissible. *Id.* The Inspector's Field Manual states that officers may "allow withdrawal," and that "[i]n exercising your discretion to permit withdrawal," officers should determine withdrawal "to be in the best interest of justice." *Id*.

The CBP Inspector's Field Manual likewise describes the authority of CBP officers in expansive terms:

> [O]nce you have gathered all the facts, you will decide, in consultation with a supervisor, the best course of action. Depending on the circumstances, you may admit the alien, allow the alien to apply for any applicable waivers, defer the inspection or otherwise parole the alien, permit the alien to withdraw his or her application for admission, issue an expedited

removal order, or refer the [non-citizen for a credible fear determination. Whatever decision is made, clearly advise the [non-citizen] of **the impact and consequences of the determination** and record this in the sworn statement.

*Id*. at 302 (emphases added).

Despite this mountain of evidence suggesting officers' broad discretion and substantial authority, Respondents claim "CBP officers do not exercise significant discretion." Resp'ts' Opp. at 17. Their assertion that CBP officers lack discretion because they must follow the inadmissibility statute is wrong for the obvious reason that all government officials, including all officers subject to the Appointments Clause, must follow the law. Respondents also cite the *Millanes-Corrales* court's finding that officers refer non-citizens to an immigration officer if the non-citizen expresses a credible fear of returning to their country of origin as evidence of their limited discretion. Resp'ts' Opp. at 17–18. But the fact that another body possess some ability to review an official's decision concerning a discrete context does not undermine that official's status as an "Officer." In *Lucia*, the Court held that administrative law judges are "officers" for Appointments Clause purposes even while acknowledging that the SEC has the authority to decide whether or not to review each administrative law judge's ruling and fact findings. 585 U.S. at 249. The *Lucia* Court pointed out that in *Freytag*, the Court determined that special tax judges ("STJs") were Officers even though "a regular Tax Court judge must *always* review an STJ's opinion, and that opinion comes to nothing unless the regular judge adopts it." *Id*. (emphasis added). The fact that CBP officers refer some cases to an IJ or immigration officer in the event an applicant indicates a desire to apply for asylum does not undermine either the substantial discretionary authority they possess or the important function they play in making admissibility determinations and, as Respondents put it, "conducting expedited removal proceedings." Resp'ts' Opp. at 18. And the reality is that CBP officers retain a wide degree of latitude in how to guide the interview and how to interpret

8

statements regarding asylum or fear of removal. For instance, the CBP Inspector's Field Manual states that "you should determine, in each case, whether the [non-citizen] has any concern about being returned to his or her country. Further, you should explore any statement or indications, verbal or non-verbal, that the [non-citizen] actually may have a fear of persecution or torture or return to his or her country." 2006 CBP Field Inspector's Manual, Chapter 17.15 at 308.

## B. THIS COURT HAS JURISDICTION OVER DR. ALAWIEH'S CLAIMS.

### 1. This Court Has Statutory Jurisdiction over Dr. Alawieh's Appointments Clause Claim Under 8 U.S.C. §§1252(e)(2)(B) and (e)(5) Because the Purported Expedited Removal Order Is Void *Ab Initio*.

Respondents' argument that "Section §1252 Bars Review of this Action," Resp'ts' Opp. at 9, falls flat. Sections 1252(e)(2)(B) and (e)(5) actually *preserve* jurisdiction over this action because the expedited removal order in question is void *ab initio*, and §§ 1252(e)(2)(B) and (e)(5) provide for federal court jurisdiction over habeas corpus petitions challenging whether a non-citizen "was ordered removed" in the first place.

#### a. *Respondents' Failure to Respond to Dr. Alawieh's Argument Concerning the Court's Statutory Jurisdiction Over Her Appointments Clause Claim Constitutes Waiver.*

Although Petitioner clearly articulated the statutory-jurisdiction-preservation argument in her Memorandum of Law, ECF No. 46 at 1, 23–24, Respondents fail to address it entirely. Respondents' response brief does not reference *Dugdale v. U.S. Customs & Border Prot.*, 88 F. Supp. 3d 1 (D.D.C. 2015), *aff'd sub nom. Dugdale v. Lynch*, 672 F. App'x 35 (D.C. Cir. 2016); *D.A.M. v. Barr*, 486 F. Supp. 3d 404 (D.D.C.2020); or the analysis addressing these cases within Dr. Alawieh's memorandum of law, ECF No. 46 at 23. These cases make clear that void *ab initio* removal orders fall under 8 U.S.C. § 1252(e)(2)(B), which preserves jurisdiction over claims that expedited removal orders were "legally ineffective." *D.A.M.*, 486 F. Supp. at 419. Nowhere in

their brief do Respondents contest the fact that "[A] void judgment, as opposed to an erroneous one, is one which from its inception was legally ineffective," *see Kansas City S. Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 825 (8th Cir. 1980) (citing *Williams v. North Carolina*, 325 U.S. 226 (1945)).

Arguments that are not raised or raised only in a perfunctory manner are deemed waived. *GGNSC Administrative Services, LLC v. Schrader*, 958 F.3d 93, 95 (1st Cir. 2020); *Moore v. Industrial Demolition LLC*, 138 F.4th at 35–36; *United States v. Zanino*, 895 F.2d 1, 17 (1st Cir. 1990); *Rivera-Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988) (citation omitted). Petitioner's argument as to this Court's statutory jurisdiction over her claims is clear: because the expedited removal order is void *ab initio*, §§ 1252(e)(2)(B) and (e)(5) preserve jurisdiction over habeas petitions challenging whether a non-citizen "was ordered removed" in the first place. ECF No. 46 at 12, 23-25. Respondents have no answer to this argument and have waived the issue.

### b. Respondents' Jurisdictional Arguments Otherwise Mischaracterize Dr. Alawieh's Appointments Clause Claim and Fail.

Even if the Court determines Respondents have not waived a response to the argument that the INA preserves jurisdiction over Dr. Alawieh's Appointments Clause claim, Respondents' jurisdictional arguments against it still fail. Respondents attempt to twist Dr. Alawieh's claims into a general challenge to "whether the expedited removal statute was properly invoked." Resp'ts' Opp. at 10.

That argument is a straw man. Dr. Alawieh does not argue under the Appointments Clause that the expedited removal framework was "improperly invoked": she asserts she was not ordered removed at all because the expedited removal order was issued by an Officer not properly appointed, a fact which renders the order void *ab initio*. *See D.A.M. v. Barr*, 486 F. Supp. at 419

(noting that *Dugdale* requires petitioners "raise a claim that their removal orders were, as a matter of law, not issued"); Pet'rs' Mem. at 2–18.

### 2. Under the Suspension Clause, this Court Has Jurisdiction Over Both the Appointments Clause and Due Process Claims that Dr. Alawieh Has Asserted.

If Respondents' broad interpretation of the INA's jurisdiction-stripping provisions were correct, then those provisions would violate the Suspension Clause. Dr. Alawieh's substantial connections to the United States mean she may invoke the Suspension Clause to establish this Court's jurisdiction over both her Appointments Clause and Due Process claims and to prevail on the merits of her Due Process Claim. Pet'rs' Mem. at 19–25.

Respondents claim that "the statutory and regulatory provisions of the expedited-removal system" is at "the heart of this case" and root that framework in the "plenary power." Resp'ts' Opp. at 4–5. They claim that Dr. Alawieh's "constitutional rights are truncated" because non-citizens "seeking admission have not been admitted to the United States." *Id*. at 4. This half-truth presentation papers over the critical fact that Dr. Alawieh established "substantial connections" in her seven years of lawful presence within the U.S. that entitle her as a matter of due process to have the question of her admissibility addressed within standard removal proceedings within the interior. Pet'r's Mem. at 19–23. Respondents fail to address that argument or to respond to the Third Circuit's decision in *Osorio-Martinez v. Att'y Gen. United States of America*, 893 F.3d 153, 166 (3d Cir. 2018).

Whatever deference this Court owes the political branches over matters of immigration remains "subject to important constitutional limitations." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). Congress must choose "a constitutionally permissible means of implementing" the plenary power. *INS v. Chadha*, 462 U.S. 919, 941-42 (1983); *Chae Chan Ping v. U.S.*, 130 U.S. 581, 604 (1889). The very cases Respondents cite recognizing the "plenary power" of the political branches

over decisions related to admission of non-citizens also distinguish between those seeking "initial admission," whose ability to seek judicial review over their exclusion is at an ebb, and those who have already been admitted to the United States, who constitute a part of "the people" and are entitled to the protection of the Bill of Rights. Non-citizens "on the threshold of initial entry" are "on a different footing" than those "who have once passed through our gates, even illegally." *Shaugnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953). "[O]nce a [non-citizen] gains admission to our country and begins to develop the ties that go with permanent residence, [her] constitutional status changes accordingly." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). Where a non-citizen who was previously protected by the Constitution briefly departs the U.S. with the intention of returning, the Court "consider[s] first what would have been his constitutional right to a hearing had he not undertaken his voyage to foreign ports but had remained continuously within the territorial boundaries of the United States." *Kwong Hai Chew v. Colding*, 344. U.S. 590, 596 (1953).

Each of the cases upon which the government relies to support its jurisdictional argument is easily distinguishable from the claims and facts here. *See* Resp'ts' Opp. at 11–12. None of the plaintiffs in any of the cases to which Respondents cite argued under the Appointments Clause that they were not "ordered removed" in the first place, triggering the related preservation-of-jurisdiction provisions at 8 U.S.C. §§ 1252(e)(2)(B) and (e)(5). Indeed, several of the cases Respondents reference make the very distinction Respondents wish to efface. *Khan v. Holder*, 608 F.3d 325, 328 (7th Cir. 2010) ("Although § 1252(e)(2) contains a limited exception permitting review of specific determinations by habeas corpus petitions, the Khans do not argue that subsection (e) applies here"); *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1087 (9th Cir. 2011) ("Nor did Barajas-Alvarado file a habeas petition or attempt to contest the prior expedited

removal orders on any of the grounds enumerated in § 1252(e)(2)"). Most glaringly, in one case relied upon by Respondents, the Ninth Circuit Court of Appeals explained that jurisdiction *would be* proper over a claim like the void *ab initio* challenge brought here: "On its face, [§ 1252(e)(2)] does not appear to permit the court to inquire into whether section 1225(b)(1) was properly invoked, but *only whether it was invoked at all*." *Meng Li v. Eddy*, 259 F.3d 1132, 1134 (9th Cir. 2001) (emphases added).

Another set of cases referenced by Respondents as to jurisdiction relate to challenges to an underlying inadmissibility determination, an argument that Dr. Alawieh does not make through this case. Resp'ts' Opp. at 11–12. *Cf. Brumme v. INS*, 275 F.3d 443, 446 (5th Cir. 2001) ("the real issue Brumme asked the district court to address…was whether she was admissible or entitled to relief from removal"); *Meng Li*, 259 F.3d at 1134 ("Were there any doubt of congressional intent, it is resolved by [1252 (e)](5), that expressly declares that judicial review does not extend to actual admissibility"); *Vaupel v. Ortiz*, 244 Fed. Appx. 892, 895 (10th Cir. 2007) ("The language of the statute clearly and unambiguously precludes review in a habeas proceeding of whether the [non-citizen] is actually inadmissible or entitled to any relief from removal") (internal quotations omitted).

Two conclusions therefore follow: (1) Dr. Alawieh's seven years of living and working in the U.S. entitle her, as a matter of due process, to have the question of her admissibility into the U.S. addressed within standard removal proceedings within the interior, and (2) any statutory jurisdiction-stripping provision that would bar review of this claim or her Appointments Clause claim would violate the Suspension Clause. *Osorio-Martinez*, 893 F.3d at 166.

###### a. Respondents' Overbroad Reading of Thuraissigiam Does Not Strip This Court of Jurisdiction.

Respondents assert that the Supreme Court's decision in *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), deprives this Court of jurisdiction over Dr. Alawieh's habeas corpus petition, asserting that her "claims fall outside the core of Habeas Corpus." Resp'ts' Opp. at 12–13. Beyond *Thuraissigiam*, Respondents cite only to two unpublished, *pro se* cases in which non-citizens brought claims challenging inadmissibility or deportability determinations against them—claims over which there is generally no district court jurisdiction, 8 U.S.C. §1252(a)(5), and that Dr. Alawieh does not bring through this lawsuit.

Respondents' reliance on *Thuraissigiam* is misplaced. Its Suspension Clause analysis as to "non-core" petitions does not apply here, where Dr. Alawieh (1) possessed precisely the type of "connections" that the petitioner in *Thuraissigiam* lacked, 591 U.S. at 107, and (2) relies not only on the Suspension Clause but also on "custody" and its collateral consequences under 28 U.S.C. § 2241. There is ample caselaw demonstrating that when an individual is confined at the time they file their habeas petition, habeas jurisdiction attaches. *See, e.g.*, *Carafas v. LaValle*, 391 U.S. 234, 238-39 (1968); *Fernos-Lopez v. Figarella Lopez*, 929 F.2d 20, 23 (1st Cir. 1991). Here, that jurisdiction is ongoing because Dr. Alawieh "continues to suffer significant restraints on [her] liberty." *Banks v. Gonzales*, 496 F. Supp. 2d 146, 150 (D.D.C. 2007); *see also Qassim v. Bush*, 466 F.3d 1073, 1078 (D.C. Cir. 2006) (per curiam) (post-custody standing for habeas claim requires demonstrating "collateral consequences") (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). Any person who is "subject to restraints not shared by the public generally" meets the requirements for custody. *Hensley v. Municipal Ct.*, 411 U.S. 345, 351 (1973) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)); *see also, e.g.*, *Nowakowski v. New York*, 835 F.3d 210, 216–17 (2d Cir. 2016); *Picrin-Peron v. Rison*, 930 F.2d 773, 775–76 (9th Cir. 1991); *Dickerson v.*

*Guste*, 932 F.2d 1142, 1144 (5th Cir. 1991), *cert. denied*, 502 U.S. 875 (1991); *Steinberg v. Police Court*, 610 F.2d 449, 453 (6th Cir. 1979).

Here, Dr. Alawieh was confined at the time she filed the initial habeas petition, and the expedited removal order she received continues to place a grave burden on her. As a direct consequence of it, she has been banished from the country she called home for seven years. Like the petitioner in *Carafas*, she cannot engage in her professional work and will have the career opportunity of a lifetime disappear before her eyes, if she is unable to resume work at Brown Medicine as one of only three transplant nephrologists in the Rhode Island. Pet'rs' Mem. at 1, 24–25. "Under the statutory scheme, once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." *Carafas*, 391 U.S. at 238.

## **CONCLUSION**

Dr. Alawieh respectfully urges the Court to exercise jurisdiction over all of her claims, grant them, and order the relief she seeks.

Dated: July 11, 2025                                   Respectfully submitted,

*/s/ Golnaz Fakhimi*
Golnaz Fakhimi
Sadaf Hasan
Eric Lee
Muslim Advocates
1032 15th Street N.W. #362
Washington, D.C. 20005
Tel: (202) 655-2969

/s/ Stephanie E.Y. Marzouk
Marzouk Law LLC
2464 Massachusetts Ave Ste 317
Cambridge, MA 02140
Tel: 617-674-2112

Fax: 617-674-1664

*Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

   I, Golnaz Fakhimi, hereby certify that I transmitted the foregoing document electronically through the Case Management / Electronic Case Filing ("CM/ECF") system to the registered participants as identified on the Notice of Electronic Filing.

                              /s/ Golnaz Fakhimi
                              Golnaz Fakhimi