UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RASHA ALAWIEH, | ) ) ) | |
| Petitioner-Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 25-10614-LTS |
| U.S. CUSTOMS AND BORDER PROTECTION OFFICER TWEEDIE et al., | ) ) ) ) | |
| Respondents-Defendants. | ) ) ) | |

ORDER ON FIRST AMENDED HABEAS PETITION AND COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF (DOC. NO. 34)

October 31, 2025

SOROKIN, J.

This action arises from Rasha Alawieh's expedited removal from the United States upon her arrival at Boston Logan International Airport in March 2025, as well as the related cancellation of her H-1B employment visa. As the Court will explain, the relief Alawieh seeks in this action is beyond what this Court can provide. The petition for a writ of habeas corpus originally filed on Alawieh's behalf articulated claims and sought relief that invoked this Court's habeas jurisdiction. See Doc. No. 1.[1] However, events that transpired within an hour of that petition's filing rendered moot the only relief properly sought via 28 U.S.C. § 2241 in this context. Alawieh's amended petition (Doc. No. 34) is, therefore, DISMISSED.

---

[1] Citations to "Doc. No. __" reference documents appearing on the Court's electronic docketing system ("ECF"). Pincites are to page numbers appearing in the ECF header or, where applicable, to paragraph numbering appearing in the original document.

I. BACKGROUND

A citizen of Lebanon and "devout Shia Muslim," Alawieh is a doctor who specializes in kidney transplants. Doc. No. 34 ¶¶ 18, 24. After completing medical school and a residency in Lebanon, she obtained a visa allowing her to pursue further medical training in the United States. Id. ¶ 24. Alawieh completed fellowships at three American universities during the six-year period beginning in June 2018. Id. Upon completing her third fellowship, Alawieh accepted a position at Brown University's Alpert Medical School. Id. ¶ 25. Her new employer, Brown Medicine, sponsored her for an H-1B visa permitting her to remain in the United States for a three-year period to work and teach at Brown. Id.; see Doc. No. 2 at 8. In June 2024, U.S. Citizenship and Immigration Services ("USCIS") approved the sponsorship, and Alawieh began working at Brown on July 1, 2024. Doc. No. 34 ¶ 25.

By early 2025, Alawieh had lived, studied, and worked in the United States continuously for more than six-and-a-half years pursuant to a series of visas. Id. ¶ 26. That is, she resided here with express permission of the United States and, as far as the record reveals, in full compliance with the law. During her time in this country, she furthered her education and developed specialized skills that a relatively small—indeed, insufficient—number of doctors share. See id. ¶¶ 8–10. With those skills, she helped to treat sick patients seeking medical care at the various institutions where she studied and worked. See id. She planned to continue treating patients, and to train future doctors to do the same, with permission she had obtained from the United States to live and work here through the middle of 2027. Doc. No. 2 at 8.

In February of 2025, however, Alawieh made what turned out to be a parlous decision. She left the country to visit her family in Lebanon. Id. ¶ 26. It was her first such visit since she arrived in the United States in 2018.

Having chosen to travel abroad, Alawieh faced inspection by immigration officers when she returned from her trip.  See 8 U.S.C. § 1225(a)(1), (3).  Alawieh's years spent living lawfully in this country would not immunize her from such inspection.  See id. (requiring inspection of "aliens . . . seeking . . . readmission"); 8 U.S.C. § 1101(a)(3) (defining "alien" as "any person not a citizen or national of the United States"); cf. Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 213 (1953) (noting "legal incidents of" noncitizen's "entry remain unaltered whether he has been here once before or not").  Her possession of a visa would not alter the inspection requirement either, nor would it guarantee her admission when she presented herself at the border.  8 U.S.C. § 1201(h).  Thus, Alawieh's decision to travel to Lebanon carried with it some risk, as the outcome of the necessary inspection was not a certainty.

While in Lebanon, Alawieh attended an event commemorating Hassan Nasrallah, a Shia Muslim religious figure and former leader of Hezbollah who died in late September 2024.  Doc. No. 16-2 at 5–6.  Hezbollah is a Lebanese political party that the United States and various other countries have designated a foreign terrorist organization.  Though Alawieh describes her own interest in Nasrallah as limited to his religious teachings, she says some members of her family supported his political party as well.  Id.  On March 11, 2025, as her visit to Lebanon drew to a close, Alawieh had "her H-1B visa (entry permit)" approved at the U.S. embassy in Beirut.[2]  Doc. No. 34 ¶ 26.  Thereafter, she flew to the United States via Paris, France, arriving at Logan Airport on March 13, 2025.  Doc. No. 16-2 at 2–3.  During her screening by agents with Customs and Border Protection ("CBP"), Alawieh was detained for further inspection and,

---

[2] The original habeas petition alleged Alawieh experienced "delays in the processing" of this entry permit "due to increased vetting of Lebanese nationals in case of any security risk."  Doc. No. 1 ¶ 14.  This delay and its cause may have foreshadowed the scrutiny Alawieh experienced upon her arrival at Logan.

3

ultimately, denied readmission to the United States. Doc. No. 34 ¶ 27. Her encounter with CBP lasted overnight, with officers reviewing the contents of her cellphone and questioning her about specific messages and photographs,[3] as well as her activities while in Lebanon and her travels elsewhere in the Middle East. See Doc. No. 16-2.

Ultimately, the officers determined that Alawieh was "inadmissible" because her "true intentions could not be determined due to derogatory information discovered during the inspection process." Id. at 6. On that basis and pursuant to 8 U.S.C. § 1225(b)(1), the officers issued and served on Alawieh a Notice and Order of Expedited Removal dated March 14, 2025. Doc. No. 16-1. Alawieh does not dispute that such a document was completed and delivered to her—nor could she, as her signature appears on an acknowledgement within the document.[4] Id. at 2. The CBP officers consequently cancelled Alawieh's H-1B visa and arranged for her departure from Logan on a flight bound for Lebanon, via Paris, on the evening of March 14. Doc. No. 1 ¶ 16; Doc. No. 16-2 at 6; Doc. No. 16-3 ¶¶ 11–14; Doc. No. 34 ¶ 29; cf. 22 C.F.R. § 41.122(e)(2) (authorizing immigration officer "to revoke a valid visa by physically cancelling it" after order of expedited removal issues).

About an hour before the flight was scheduled to depart, Alawieh's cousin initiated this action by filing a federal habeas petition on her behalf. Doc. No. 1 (filed at 6:43 PM on March 14). A lawyer representing Alawieh was present at Logan and notified officers at CBP's service

---

[3] Alawieh's WhatsApp history included depictions of "Hezbollah fighters and martyrs" and links to videos featuring Nasrallah and the leader of Iran. Doc. No. 16-2 at 3–4. Some of these photos and videos were among items Alawieh had deleted in the days before she flew to the United States. Id. at 4.

[4] Neither the record nor the briefing to this Court suggests that Alawieh claimed a fear of torture or persecution if returned to Lebanon. Her voluntary decision to travel there suggests she held no such fear. Noncitizens who express such fears are entitled to additional process before an expedited removal order issues. § 1225(b)(1)(A)(ii), (B).

4

desk of the filing. See Doc. No. 10-1 ¶ 7 (stating lawyer spoke with officer at desk at approximately 6:48 PM, and officer then went into CBP office); Doc. No. 16-3 ¶ 10 (describing CBP Watch Commander having learned of petition at approximately 7:00 PM). Promptly after being assigned the case, this Court issued an order prohibiting Alawieh's transfer "outside the District of Massachusetts" absent forty-eight hours' advance notice. Doc. No. 4 (filed at 7:18 PM on March 14). Around the time that order issued, the CBP Watch Commander left the service desk with other CBP officers to walk Alawieh to the departure gate for her flight. See Doc. No. 16-3 ¶ 11 (stating this occurred around 7:20 PM). The lawyer returned to the service desk after receiving the Court's order but discovered that the officers were no longer there. Doc. No. 10-1 ¶¶ 12–13 (stating order was received by lawyer at 7:21 PM).

  The lawyer then made several calls to a CBP telephone number posted at the then-empty service desk, in one instance speaking to "an unidentified CBP agent" to whom the lawyer "explained the situation." Id. ¶ 14. Though that officer said a supervisor would come to the service desk to speak with the lawyer, no supervisor arrived. Id. ¶ 15. After waiting twenty minutes, the lawyer unsuccessfully sought help at other locations in the airport. See id. ¶¶ 18–20 (describing visits to terminal security line, airline check-in area, and state police kiosk). Only after Alawieh's flight had departed did the lawyer return to the service desk, find a CBP officer there, and show the officer an electronic copy of the Court's order. Id. ¶¶ 22–25 (placing these events after 8:05 PM); Doc. No. 16-3 ¶¶ 14–15 (stating flight departed at 7:43 PM, and Watch Commander learned of lawyer having shown order to officer at approximately 8:10 PM); cf.

Doc. No. 16-3 ¶ 18 (stating Watch Commander learned at about 8:20 PM that CBP's counsel had first received order after Alawieh's departure). By then, Alawieh was gone.[5]

On March 17, 2025, the respondents answered the petition, Doc. No. 16, and Alawieh's original lawyers withdrew from their representation, see Doc. No. 19. New counsel entered thereafter and, in May 2025, filed a First Amended Habeas Petition and Complaint for Declaratory and Injunctive Relief—now the operative pleading. Doc. Nos. 24, 34. The Court set a briefing schedule. Doc. No. 37.[6] No party has sought an evidentiary hearing or proposed submitting further evidence. The matter is now ripe, and the Court resolves it on the papers.

## II. LEGAL STANDARD

The jurisdiction of federal district courts in a case such as this one is limited twice over. First, a court may grant a writ of habeas corpus "to a prisoner" only if she "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

---

[5] These details are before the Court because Alawieh's original counsel raised a possible violation of the Court's order requiring notice before removing Alawieh from Massachusetts. See Doc. No. 10. The Court required the respondents to address this issue in their answer to the original petition, and they did so. See Doc. No. 16-3. The timeline that emerges from the parties' declarations suggests rapidly evolving events that do not, on the present record, support a finding that the respondents knowingly violated the Court's order. The Court need not explore this issue further, as Alawieh has not continued to press it (e.g., by presenting argument in her reply, challenging the respondents' evidence, or seeking to develop the record further).

[6] As contemplated in the briefing schedule, Alawieh filed a memorandum supporting her amended petition, the respondents filed a memorandum opposing it, and Alawieh filed a reply. Doc. Nos. 46, 50, 53. Both of Alawieh's submissions were overlength, with the Court's approval. See Doc. Nos. 45, 52. Weeks after briefing was complete, Alawieh filed a "Notice of Supplemental Authority" discussing a Supreme Court decision issued before Alawieh filed her reply. See Doc. No. 54 (arguing that Kennedy v. Braidwood Mgmt. Inc., 145 S. Ct. 2427 (June 27, 2025), supports Appointments Clause claim). The respondents moved to strike the Notice because it did not cite "new" authority, offered argument and not simply "notice," and was filed without leave of Court. Doc. No. 55. Having reviewed the Notice, the motion to strike it, and Alawieh's opposition to that motion, the Court agrees with the respondents. The motion to strike is ALLOWED. Alawieh raised Kennedy in her reply, Doc. No. 53 at 8 n.1, and the Court has reviewed it. In any event, it has no bearing on the Court's evaluation of the jurisdictional and mootness issues that are dispositive here.

This language makes "clear," as does "the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973); see also Munaf v. Geren, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention."). Where a petitioner seeks relief that "falls outside the scope of the writ as it was understood when the Constitution was adopted," her claims are beyond the reach of a federal court's habeas jurisdiction. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 119 (2020). The Supreme Court has "reject[ed] the use of habeas" in cases where petitioners sought orders "requiring them to be brought to this country" or permitting them "the opportunity to remain lawfully in the United States." Id. at 118–19. Whereas a request for "vacatur of [a] removal order" rather than release from confinement "might fit an injunction or writ of mandamus," it seeks an "entirely different relief" than that which was available via "the common-law habeas writ." Id. at 117–18.

A federal district court's jurisdiction is further confined by statute in the immigration context. The Immigration and Nationality Act ("INA") places various restrictions on judicial review of orders of removal. Generally, challenges to such orders may be pursued only by petitioning a court of appeals—not in actions filed in federal district courts. 8 U.S.C. § 1252(a)(5), (b)(9). Nearly all challenges to denials of discretionary relief or determinations related to the inspection and expedited removal of noncitizens arriving at the border are beyond the jurisdiction of any federal court. § 1252(a)(2), (e)(1).

As relevant here, Congress has expressly identified only three specific issues that may be explored in a habeas petition brought by a noncitizen subject to an expedited removal order,

7

including "whether the petitioner was ordered removed under" § 1225(b)(1).[7] § 1252(e)(2)(B). This is a narrow question by Congress's design. "In determining whether an alien has been ordered removed under section 1225(b)(1) of this title," a federal district "court's inquiry shall be limited to whether such an order <u>in fact</u> was issued and whether it relates to the petitioner." § 1252(e)(5) (emphasis added). A court may not consider "whether the alien is actually inadmissible or entitled to any relief from removal." <u>Id.</u> If a court resolves this question in a petitioner's favor, the INA permits "no remedy or relief other than to" order a full removal hearing. § 1252(e)(4). Thus, the INA precludes all district court review of any challenges to an expedited removal order <u>except</u> for a habeas petition raising an issue explicitly carved out of the jurisdiction-stripping provision—and, as to those issues, Congress has eliminated all but one form of available relief.

As the Court will explain, these principles, applied to Alawieh's amended petition, compel a finding that the relief now sought falls beyond this Court's circumscribed jurisdiction. Neither the Suspension Clause nor the collateral effects of the removal order supply a basis for this Court to conclude otherwise.

III.  <u>DISCUSSION</u>

When this action began, Alawieh was in the custody of CBP officers at Logan waiting to board a flight bound (ultimately) for Lebanon. The original petition alleged Alawieh's detention violated the Fifth Amendment's guarantee of due process and multiple federal statutes, and the relief sought was her "release." Doc. No. 1 ¶¶ 1, 22–25, Prayer for Relief. That petition, on its

---

[7] The other two questions are "whether the petitioner is an alien" and "whether the petitioner can prove by a preponderance of the evidence" that she has been granted lawful permanent residence, refugee status, or asylum. § 1252(e)(2)(A), (C). Neither of these are at issue here, as Alawieh does not dispute that she is "an alien" (as the INA defines that term) lacking any of the three long-term statuses that would except her from expedited removal.

face, sounded in habeas and sought the type of relief that is "the traditional function of the writ." Rodriguez, 411 U.S. at 484. Because the Court's jurisdiction attached when the petition was filed, it remains intact to the extent Alawieh continues to assert claims and seek relief properly pursued in a habeas petition and not restricted by the INA. See Leitao v. Reno, 311 F.3d 453, 455 (1st Cir. 2002) (explaining that petitioner's custody at time of petition's filing "is enough to satisfy [§ 2241's] jurisdictional custody requirement"); cf. Rumsfeld v. Padilla, 542 U.S. 426, 441 (2004) (finding habeas court "retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate" the relief ordered where petitioner is moved after properly filed petition naming original immediate custodian).

Soon after the petition was docketed, the respondents released Alawieh from their custody, placed her on a departing flight, and removed her from the United States. When that occurred, her executive detention ended. Cf. Thuraissigiam, 591 U.S. at 119 (describing "release . . . in the cabin of a plane bound for" noncitizen's nation of origin as "equivalent of the habeas relief" historically available). Though these events did not deprive the Court of whatever jurisdiction it had to start, they led the respondents to urge that Alawieh's claims were moot, as the Court could no longer order release. See Doc. No. 16 at 16–18.

Apparently understanding that her removal had materially altered the viability of her original claims, Alawieh (acting through new counsel) filed an amended petition that largely abandoned those claims in favor of new causes of action and new requests for relief. Doc. No. 34. In particular, the amended petition includes two causes of action expressly styled as habeas claims—invoking the Appointments Clause and the Suspension Clause, respectively—and a third cause of action arising under the Administrative Procedure Act, 5 U.S.C. § 706. Doc. No.

9

34 at 13–14.[8] The amended petition omits the prior requests for release, asking the Court instead to: 1) "[d]eclare that the expedited removal order issued against [Alawieh] violates the Appointments Clause and/or the Suspension Clause"; 2) "order Respondents to place [Alawieh] into [full] removal proceedings before a properly appointed Immigration Judge"; 3) "[o]rder a pre-deprivation [bond] hearing" with the government bearing a specific burden of proof; 4) "[d]eclare that the revocation of Dr. Alawieh's H-1B visa violates" 8 U.S.C. § 706; and 5) "order Respondents to reinstate" the visa.  Doc. No. 34 at 15.

The respondents answered the new pleading, primarily arguing that the Court lacks jurisdiction and continuing to suggest any claims properly brought in habeas are moot.  Doc. No. 50 at 16–22.  In reply, Alawieh relied on the Suspension Clause and collateral effects of her expedited removal order in urging the Court to reach the merits of her claims.  Doc. No. 53 at 15–21.  She also argued that the alleged Appointments Clause violation rendered her expedited removal order "void ab initio," such that no order actually issued "in the first place," and this Court's habeas jurisdiction was preserved by the INA.[9]  Id. at 8, 15.  Having reviewed the

---

[8] The original petition had also asserted a claim under § 706, but the Appointments and Suspension Clause claims appeared for the first time in the amended pleading, replacing substantive and procedural due process claims that had appeared in the original version.  See Doc. No. 1 at 5–6.  A claim brought directly under three enumerated sections of the INA was also omitted from the amended pleading.

[9] To support this argument, Alawieh relies on cases in which facially defective removal orders were challenged—for example, orders lacking a required supervisor's signature.  See, e.g., Dugdale v. U.S. Customs & Border Patrol, 88 F. Supp. 3d 1, 6–7 (D.D.C. 2015) (noting factual issue regarding whether order issued with supervisor's approval and was therefore valid notwithstanding missing signature and ordering further proceedings as to that question).  She cites no cases, nor has the Court found any, in which a federal court has exercised habeas jurisdiction to review an expedited removal order in circumstances such as those presented here—i.e., where the removal order was facially complete, undisputedly served on the petitioner, and already executed; where the sole challenge to the order arose under the Appointments Clause; and where the relief sought no longer included simple release—and granted relief including vacatur of the order.  But see Agarwal v. Lynch, 610 F. Supp. 3d 990, 999–1002 (S.D. Mich. 2022) (applying Rule 12(b)(6) standard and denying motion to dismiss where factual

parties' submissions and considered the governing legal standards, the Court finds that Alawieh's release by CBP has mooted any habeas claim she initially advanced, and the above-described jurisdictional limits preclude the forms of relief Alawieh seeks in her amended petition.

A petitioner's deportation does not necessarily moot her challenges to a removal order. See Leitao, 311 F.3d at 455–56 (holding that "bar on readmission of a removed alien is a legally cognizable collateral consequence that preserves a live controversy even after deportation of the petitioner"). Nevertheless, other courts have dismissed habeas petitions as moot after the petitioners were removed. E.g., Gicharu v. Moniz, No. 23-cv-11672-MJJ, 2023 WL 5833115, at *1–2 (D. Mass. Sep. 8, 2023) (finding habeas claim moot and dismissing without prejudice non-habeas civil claims raised after filing of original petition). Alawieh alleges she is subject to a five-year bar on readmission as a collateral consequence of her expedited removal by CBP, Doc. No. 34 ¶¶ 4, 19; Doc. No. 46 at 20, 31, and the Court has considered whether that bar suffices to preserve a live controversy within this Court's power to remedy via a habeas proceeding. After much thought, the Court finds that resolving this question in Alawieh's favor would disregard the Supreme Court's analysis in Thuraissigiam.[10] This the Court cannot do.

---

questions existed as to whether expedited removal order had issued due to discrepancies in multiple versions of order, and where Appointments Clause claim was raised in petition that expressly sought "simple release," but not discussing or resolving the merits of that claim or what relief might arise from it).

[10] This Court is bound by decisions of both the Supreme Court and the First Circuit. Though Leitao might be read to suggest the bar Alawieh faces prevents a finding of mootness here, it cannot have accounted for Thuraissigiam's discussion (nearly twenty years later) of the jurisdictional limitations on habeas relief available to noncitizens challenging removal orders. And, confined to its facts, Leitao resolved whether a lawful permanent resident who had not voluntarily left the country but was detained after serving a criminal sentence could seek via a habeas petition a pre-removal hearing to which he was entitled pursuant to an intervening Supreme Court decision. 311 F.3d at 454–55. The First Circuit concluded that the petitioner's deportation after the district court dismissed his habeas petition had not rendered his appeal of

Alawieh no longer seeks release from confinement or any other ongoing supervision by immigration authorities which might constitute "custody" in a habeas context. Instead, she essentially seeks to be "released" from an order of expedited removal and the conditions arising therefrom which limit her ability to return to the United States. But the five-year bar on her return is not a consequence of the <u>detention</u> she originally challenged as unlawful. It is a feature of the expedited removal order issued during that detention—an order which, ultimately, led to her release from detention into the cabin of a plane leaving the United States. That release, in that fashion, is precisely the remedy that <u>Thuraissigiam</u> describes as the only one properly within a federal district court's core habeas jurisdiction. 591 U.S. at 119. Alawieh's quest for relief from the expedited removal order, on the other hand, seeks something the Supreme Court has deemed "so far outside the 'core' of habeas" that it "may not be pursued through habeas"—that is, "an order requiring" Alawieh "to be brought to" or allowed to enter "this country." <u>Id.</u>

A point made by the majority in <u>Thuraissigiam</u> applies equally here: "Simply releasing" Alawieh from the expedited removal order (if that were something this Court could do) "would not provide the right to" enter and "stay in the country that her petition ultimately seeks." <u>Id.</u> (citation modified). To secure that right, Alawieh would need an order with additional requirements. First, she would need a valid visa. Even if her previous visa were reinstated, she would then need CBP officers at the border to admit her upon inspection when she arrives (or, at least, to parole her into the country pending removal proceedings), without detaining her unless they first make certain showings. <u>Cf.</u> Doc. No. 34 at 15 (requesting court-ordered "pre-deprivation hearing" applying bond standard that governs in non-expedited-removal process

---

that dismissal moot. <u>Id.</u> That conclusion, in those circumstances, does not compel a finding that Alawieh has presented a live controversy remediable in habeas here.

under 8 U.S.C. § 1226(a)). These are matters of discretion reserved to the political branches that have been intentionally and expressly removed from the ambit of judicial review. See Arandi v. Morgan, No. 19-cv-12351-RGS, 2020 WL 1891949, at *1 (D. Mass. Apr. 16, 2020) ("Congress . . . meant the divestiture of jurisdiction to be at its zenith when it comes to the admission and exclusion of nonresident aliens presenting themselves at the U.S. border."); cf. Hinds v. Lynch, 790 F.3d 259, 262 (1st Cir. 2015) ("The Constitution vests Congress with plenary power to set the circumstances under which noncitizens are permitted to enter and remain in the United States.").

In sum, this Court simply cannot issue in this habeas action the orders Alawieh hopes to obtain. Its habeas jurisdiction does not sweep broadly enough to permit the declarations and orders Alawieh requests, both due to the limitations articulated by the Supreme Court in Thuraissigiam and those established by Congress in the INA. Because the relief she seeks falls so far beyond the traditional core of habeas jurisdiction, her resort to the Suspension Clause cannot save her petition from dismissal. See Thuraissigiam, 591 U.S. at 140 (finding Court of Appeals "erred in holding that § 1252(e)(2) violates the Suspension Clause"); D.A.M. v. Barr, 486 F. Supp. 3d 404, 419–21 (D.D.C. 2020) (finding INA stripped habeas court of jurisdiction to decide "whether the government may lawfully implement" removal orders that petitioners challenged as void after another district court found them "to have been illegally issued," and concluding Thuraissigiam "forecloses" argument that Suspension Clause revives such claims).[11]

---

[11] The Court appreciates that Alawieh's patients and colleagues, who hope for her to return and continue providing medical care and training at Brown, may be troubled that she has no judicial remedy in habeas for an expedited removal she alleges occurred in violation of the Appointments Clause of the United States Constitution. "But Congress's policy of severely restricting litigation related to removal orders makes no exception for troubling cases," including Alawieh's, and the Court may not "interpret the Suspension Clause to supply jurisdiction wherever fairness may call for it." D.A.M., 486 F. Supp. 3d at 421.

And where the Court's power is restricted by the INA and the limits of habeas review, the APA cannot step in to fill the jurisdictional void. See Arandi, 2020 WL 1891949, at *1 (noting "APA is not itself a jurisdictional statute" and "does not apply where" the INA strips court of jurisdiction).

IV. CONCLUSION

For the foregoing reasons, the Court concludes it lacks jurisdiction to grant Alawieh the relief she seeks in this action.[12]  Her First Amended Habeas Petition and Complaint for Declaratory and Injunctive Relief is, therefore, DISMISSED.  Each party shall bear their own fees and costs.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[12] The Court has limited its review to the causes of action and forms of relief Alawieh (through counsel) has asserted in the operative pleading.  In dismissing that pleading, the Court expresses no view on the viability of any non-habeas civil claims Alawieh might press in a separate action.  It also does not—and cannot, on the present record—resolve whether CBP officers conducting inspections, issuing expedited removal orders, and/or canceling visas when screening noncitizens at our nation's borders are "inferior officers" for purposes of the Appointments Clause.  Cf. United States v. Millanes-Corrales, No. 22-cr-2109, 2024 WL 2892446, at *2–17 (D. Ariz. Jan. 23, 2024) (finding CBP officers at issue were not "inferior officers" only after detailed fact testimony of two officers recounted at length by court).